LEMUEL E. FITE V. STATE.

No. 26,478.　June 17, 1953.

*Archer & Hazlewood* [*Jack C. Hazlewood* of Counsel] Amarillo, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for robbery; the punishment, 5 years in the penitentiary.

Appellant was identified by the complaining witness W. B. Jones, a service station attendant in the city of Amarillo, as being the man who robbed him of the bills which were in the cash register by threatening to kill him with a pistol he had in his pocket.

The time of the robbery was fixed by Jones as being about 1:45 A.M. on the morning of September 19, 1952. The robbery was immediately reported to the police and to the owner of the filling station, Lloyd Nollner.

Mr. Nollner testified that he was called around 2 A.M., and found that the cash register was short $99.00, there being some silver but no bills in the register when he checked it.

Patrolman Charles E. LeFever testified that he and his

fellow officer F. Adams received a report of the robbery about 1:55 A.M. and investigated the case.

Appellant complains that he was not permitted to introduce the "Offense Report" on file in the Police Department as a record of the investigation of the robbery.

The evidence shows that appellant's hair is black. The report tendered as evidence contains a notation: "5' 10" or 11", at least 30 yrs., med. complexion, very dark red hair; auburn, bare headed, short sleeve T shirt, light tan, levies, Tan oxfords. Round face. Upper teeth spaced."

The prosecuting witness Jones testified that he did not remember having stated that the man who robbed him had red hair, but that it was possible he did so state.

Officer LeFever was questioned as to the report of the robbery, and testified that Officer Adams made out the report and he did not assist, and did not know what he reported.

The notation appearing on the report above quoted was read to Officer LeFever while he was a witness and he was asked if there was anything said to him "about very dark red hair or auburn." He answered that nothing was said about that to him, but it could have been said to Officer Adams during his absence. Officer Adams was not present at the trial.

Appellant contends that the "Offense Report" containing the quoted notation was admissible as evidence under the provisions of Art. 3731(a) Vernon's Ann. Civil Statutes.

If we understand appellant's construction of Art. 3731(a) V.A.C.S. it is that the record, though hearsay, is admissible as original evidence to prove the truth of the matter therein stated, and is not to be limited to impeachment purposes.

Under the provisions of Art. 704 C.C.P. the provisions of Art. 3731 (a) V.A.C.S. are applicable to criminal cases, same not being in conflict with the Penal Code or Code of Criminal Procedure. However, under the provisions of said Art. 3731(a) the records therein described are admissible only so far as they are relevant.

We recognize appellant's right to question the testimony of

the prosecuting witness identifying him as the robber by showing, if he could, that in reporting the robbery the witness gave a description of the robber as being a red-head, whereas his hair was black. We are unable to see any relevancy, however, in evidence which merely shows that at some time during the investigation a person with dark red hair was suspected of having committed the offense.

If such facts were relevant, then they were established when it was shown that the taxi driver Coy, a red-head, was questioned by the police about this and other robberies.

There is nothing in the record sought to be introduced to indicate that the prosecuting witness Jones described the robber as having "dark red hair; auburn." The report, except for the notation above quoted, is typewritten and contains the following:

"The description of the robber is as follows: He was wearing a lt. Tan T-shirt, Levies, and brown shoes. He was full faced and weigh*ted* about 180 lbs. and had a 45. cal, automatic, which he did not take from his hip pocket at all."

The notation first quoted described the suspect as having dark red hair follows the typewritten description just quoted and appears to have been written there with a pencil.

In view of the positive identification of appellant by the prosecuting witness, we conclude that the record showing merely that a person with dark red or auburn hair was at one time a suspect was not relevant.

We further observe that the description of a suspect found on the offense report, since no officer witnessed the robbery, was necessarily hearsay.

In Smith et al v. Riviere, 248 S.W. 2d 526, 530 (Civil Appeals, no writ history) commenting upon Art. 3731(a) and a Federal statute, it was said:

"Neither statute expresses or implies an intent to abrogate the well-settled principle of the common law of the inadmissibility of hearsay evidence based on further hearsay evidence. As stated in 20 Am. Jur., p. 766, and applicable here, 'Documentary evidence, when offered in evidence is subject to the same rule of evidence respecting relevancy, competency or materiality as to oral testimony."

The Supreme Court of Michigan, in Kelly v. Ford Motor Co., 273 N. W. 737, in discussing the effect of a statute similar to the one before us, said the following:

"So far as is shown in the record before us, if each person concerned with the making of the entries, investigations, and reports were called to the witness stand, the testimony of such parties could be nothing more than hearsay, so far as the actual facts of the claimed accident are concerned. The statute should not be construed in a manner that would make the reports and records admissible, when the oral testimony of the same facts would be inadmissible."

The robbery occurred at about 1:45 A.M., the officers having received the call and Nollner notified by 2 A.M.

Appellant next complains that the court, in his charge, applying the law of alibi, instructed the jury to acquit appellant if he was at 900 Houston Street in the city of Amarillo and not at the Nollner Service Station. He contends this is too restrictive.

Appellant did not testify, but offered the witness Joe Moore who testified in part as follows:

"Q. Can you account for Fite's whereabouts between the hours of one o'clock and two o'clock the morning of Friday, September 19th? A. Yes sir.
"Q. Where? A. He was at home in bed.
"Q. He was at home in bed? A. Yes sir.
"Q. And I suppose you were at home in bed with him? A. Yes sir.
"Q. Anybody else in the room except you and Fite? A. Yes, John David Farley.
"Q. Do you know where John David Farley is now? A. He is in the Army; I don't know where he is stationed."

.  .  .  .  .  .  .  .  .

"Q. What time did you leave the Chicken-Inn? A. Some time before midnight.
"Q. Where did you go from the Chicken-Inn? A. Took Farley's girl friend home and then straight home ourselves.
"Q. Straight home? A. Yes Sir.
"Q. Is that 900 Houston Street? A. Yes sir.
"Q. What apartment did you all stay in? A. Apartment Two.
"Q. You and Farley and Fite, all three stayed, stayed in Apartment Two? A. Yes sir.

"Q. And you went to bed about what time? A. About ten minutes to one o'clock."

. . . . . . . . . .

"Q. When you went to sleep, was the defendant, Fite, asleep too? A. Yes, he was passed out.

"Q. When did you wake up next morning? A. About nine o'clock.

"Q. When you woke up, did you look over where Fite's bed was and see him lying in the bed? A. Yes, and he was still there.

"Q. Can you swear to the jury that Fite didn't leave that room from ten minutes to one o'clock until you woke up next morning? A. Yes sir.

"Q. You know he didn't leave that room from ten to one until the next morning? A. Yes; he had drunk too much whiskey."

. . . . . . . . . .

"Q. And you took her home (Farley's girl) and went right back to the apartment and went to bed at about ten minutes to one o'clock? A. Yes sir.

"Q. That is at 900 Houston Street? A. Yes sir.

"Q. And neither you nor Fite nor Farley went anywhere else that night? A. That is right."

Such being the evidence raising the issue of alibi, we find no error in the court's charge to the effect that if the jury believed or had a reasonable doubt that at the time of the robbery appellant was not at the Nollner Service Station where it occurred, and "was at 900 Houston Street in the City of Amarillo" they should acquit. The evidence raised no issue of alibi other than that he was at 900 Houston Street in Amarillo at the time of the robbery, and could not therefore have been the robber.

The jury rejected the defense of alibi and accepted the testimony of the prosecuting witness identifying appellant as the perpetrator of the offense. The evidence sustains the conviction and we find no reversible error.

The judgment is affirmed.