Frank H. Connelly, J.
The defendant is accused of violating a local ordinance prescribing a vehicular speed limit of 25 miles per hour. Upon the trial, the prosecuting officer testified in substance that he followed the defendant’s vehicle in a police car and noted that his own speedometer read 42 miles per hour, while a constant distance was maintained between the two cars.
Proof of speeding, based solely upon the reading of an untested speedometer has been held to be legally insufficient (People v. Hey ser, 2 N Y 2d 390). To establish the accuracy of the speedometer, the People offered in evidence a card purporting to show the result of a calibration test made on the day of the alleged offense. One side of the card reads:
Bureau of Police Department of Public Safety City of New Rochelle, N. Y.
Speedometer Test
We have this day tested Speedometer Car No. 17 and found it to be (Over) Dated 11/26/63 Signed Ptl. James Bartnett
43
The reverse side reads:
Speed: 15 25 35 40 50 60
Error: 0 0 0 0 —1 —1
The prosecuting officer, who was the only witness called, testified that he neither saw the test performed nor knew anything of the testing method. No evidence was offered concerning the qualifications of the tester and, for all that appears, the testing method may have been devoid of scientific validity.
*352 Proof was given that the test card had been prepared and kept in the normal routine of the Police Department, and the procedural requirements of rule 4518 of the Civil Practice Law and Rules were generally satisfied. Because of doubt as to the essential competency of the proffered exhibit, the court reserved decision upon its admissibility.
The exhibit actually shows nothing beyond the fact that the named patrolman and one or more unidentified other persons, referred to as “we ”, subjected the speedometer to some procedure which they called a test, and that the speedometer thus “ tested ”, showed insignificant deviations from perfection.
If the tester had taken the stand as an expert witness, it is clear that he could not have competently testified to his bald conclusion that the speedometer was substantially accurate without showing his qualifications to express such a judgment (32 C. J. S., Evidence, pp. 94 — 95, §§ 456-457) and without describing and justifying, at least in summary fashion, the process by which he arrived at such judgment. (Weibert v. Hanan, 202 N. Y. 328, 331; People v Samuels, 302 N. Y. 163,172.)
Incompetent evidence does not become competent through its inclusion in a “ shopbook ” record (Bothner v. Keegan, 275 App. Div. 470; Matter of Coddington, 307 N. Y. 181, 195).
Furthermore, the very format of the card indicates that it was made up and ¡kept primarily, if not exclusively, for .subsequent use as an exhibit. It does not bear the earmarks of a garage keeper’s mjaintenanee record.
The proffered 'exhibit is in the category of the railroad engineer’s accident report in Palmer v. Hoffman (318 U. S. 109) concerning which the court said (p. 114): “Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading.”
The United States Supreme Court noted that if such records were to be received as a substitute for testimony, “ We would then have a real perversion of a rule designed to facilitate admission of records which experience has shown to be quite trustworthy ” (p. 113). The statutory “.shopbook ” rule was designed to permit incidental testimonial use of records which are made and kept primarily for nontestimonial purposes, rather than the other way round.
One may perhaps rationalize a distinction between the accident reports of a private corporation and the crime data of a Police Department by suggesting that the recording and furnishing of evidence is a principal part of the “ business ” of law *353 enforcement. But that distinction, if recognized, would accomplish too much and would dispense with oral testimony wherever a policeman who witnessed the commission of a crime kept a good notebook.
A “ shopbook ” record, compiled for primary use as an exhibit, whether by a merchant or by a policeman, is inadmissible. Although no reported New York decision appears to have dealt with the topic, the Federal counterpart of the New York statute (viz., U. S. Code, tit. 28, § 1732) is construed to bar the admission of such exhibits and, lacking other authority, the Federal rule will be here followed.
In Yung Jin Teung v. Dulles (229 F. 2d 244) the Government offered as “ shopbook ” records certain investigatory data prepared by the immigration authorities for use in a deportation case. Concerning these records, the Court of Appeals said (p. 247): “ Nor are they admissible under 28 U. S. C. A. § 1732 as records made in the regular course of business as they appear to be reports made for the specific purpose of this litigation such as were held inadmissible in Palmer v Hoffman ”. In United States v. Ware (247 F. 2d 698) the memoranda of narcotics agents were excluded with a similar observation (p. 700): “They are also subject to the objection that such utility as they possess relates primarily to prosecution of suspected law breakers, and only incidentally to the systematic conduct of the police business. Cf. Palmer v Hoffman, supra. ’ ’
In certain settings, compilations or analyses of material already in evidence are admissible, notwithstanding that they are prepared exclusively for testimonial use, but such documents are in a different category since they are mere digests of the existing record, rather than original evidence in themselves. (Public Operating Corp. v. Weingart, 257 App. Div. 379, 382; United States v. Mortimer, 118 F. 2d 266.)
Since January 1, 1939, a defendant in a criminal case in New York has possessed the constitutional right to “be confronted with the witnesses against him ” (art. I, § 6). To the extent that the “ shopbook rule ”, as it had previously existed, was at variance with the new constitutional principle, the existing rule of evidence has been continued as an implied exception thereto. (People v. Nisonof, 267 App. Div. 356, affd. 293 N. Y. 597.) But new encroachments upon the right of confrontation, whether accomplished by new principles of evidence or by the expansion of existing rules, may not be sanctioned {ibid.). There does not appear to have been any pre-1939 authority for the admission under section 374-a of the Civil Practice Act (now CPLR 4518) of records contrived for testimonial use. The recent trend, in *354 that direction, pursued in the name of administrative convenience (see People v. Jones, 10 Misc 2d 1067; Speeding and Due Process, 28 Ford. Law Rev. 115) cannot easily be reconciled with the constitutional mandate.
Whether the calibration card, in a different setting, might constitute an admissible certificate under section 4520 of the Civil Practice Law and Rules (cf. Bothner v. Keegan, 275 App. Div. 470) need not be decided, as it was noi offered upon that premise nor authenticated under that provision. It is enough to say that it is not a ‘ ‘ shopbook ’ ’ record under rule 4518 of the Civil Practice Law and Rules.
The prosecuting officer testified that he has driven a car for several years, for a distance of about 100,000 miles, and that he has found his émpirical judgment of speed to be correct within a tolerance of five miles per hour. The court regards that as reasonable and probable.
He testified that while following the defendant for a distance of upwards of one eighth of a mile, his own rate of speed appeared to him to be about 40 miles per hour, without reference to his speedometer. That is 60% above the critical speed of 25 miles per hour, and the whole excess cannot rationally be ascribed to imperfect judgment. The defendant did not testify.
Upon the testimony of observed speed, fortified by the reading of the untested speedometer, there is no doubt that the defendant was driving in excess of 25 miles per hour (cf. People v. Tanner, 6 Misc 2d 1007). He is therefore found guilty.