Henry Martinez PORTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 57553.

Court of Criminal Appeals of Texas,
En Banc.

March 28, 1979.

Ronald W. Aultman, Jerry J. Loftin and John M. Anderson, Fort Worth, All court appointed, for appellant.

Tim Curry, Dist. Atty., Marvin Collins, Joe Shannon, Jr. and Ronald G. Knight, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of capital murder. The punishment was assessed at death.

Appellant contends that the trial court erred in permitting, over objection, at the punishment phase of the trial, the introduction of letters, reports, and documents from a federal parole officer's file pertaining to appellant's supervision and progress while on federal parole. We agree and reverse the judgment.

Appellant was convicted for the murder of Fort Worth police officer Henry P. Mailloux. Appellant fatally shot Mailloux on the morning of November 29, 1975, after Mailloux stopped him for investigation of three armed robberies. The State introduced evidence identifying appellant as the perpetrator of armed robberies having occurred on November 18, 24, and 28, 1975, in Fort Worth. In addition, there was evidence that appellant had three prior felony convictions and therefore faced a possible life sentence as an habitual criminal should he be convicted again.

Appellant, who was shot during an exchange of gunfire with Mailloux, testified that he pulled his gun only after Mailloux shot him without provocation, and that the gun accidentally discharged during a subsequent struggle. Appellant fled from the scene following the shooting, and was arrested in San Antonio on December 1.

At the punishment phase of the trial, the State called J. M. McIntyre, a United States probation-parole officer for the Western District of Texas. McIntyre testified that, though he did not know appellant, his office in San Antonio had supervised appellant

while he was on parole. McIntyre further testified that a record had been kept of his office's contacts with appellant. Thereafter, the prosecutor attempted to elicit testimony from the witness, based on the records, as to the parole office's first contact with appellant. The court sustained appellant's objection on the grounds of hearsay and that the witness was "not the person in charge."

The prosecutor then asked the witness to remove from the file he had brought with him and clip together "certain records" which "pertain to contacts with this man" had by the parole office. These selected materials were marked as State's Exhibit No. 53 and a photocopy of the exhibit was offered in evidence. Appellant objected to the introduction of the exhibit on several grounds, among them that the proper predicate had not been shown for the admissibility of the exhibit, the exhibit was "hearsay upon hearsay letters to individuals—and letters as copies in the file," and the exhibit denied the rights of cross-examination and confrontation. This objection was sustained.

The prosecutor thereafter questioned McIntyre regarding the dates and reasons for the various contacts between appellant and his office. Appellant declined to cross-examine McIntyre, and the witness was excused.

Following a recess, McIntyre was recalled by the State. The materials he had removed from his file, now marked as State's Exhibit No. 54, were again offered in evidence. This time, the materials were admitted, over appellant's objection that he was being denied his right of confrontation. The prosecutor then had McIntyre identify each of the documents in the exhibit and read to the jury certain passages therefrom. During this testimony, appellant repeatedly objected on the grounds of hearsay and denial of confrontation.

State's Exhibit No. 54 consists of five documents. The first is a copy of a letter dated February 20, 1973, from Paul F. Cromwell, Jr., a United States probation officer in San Antonio, to Harry Ebberhardt, a counselor at a San Antonio drug abuse treatment center known as the Patrician Movement. Among other things, this letter refers to appellant's "aggressive nature," and quotes unnamed psychologists for the proposition that appellant has "a psychopathic personality" and "indications of paranoid schizophrenic behavior."

The second document is a copy of a letter dated September 26, 1973, from Robert E. Adamina, Jr., a United States probation officer in San Antonio, to Steve D. Johnston, Parole Executive, United States Board of Parole in Washington, D.C. This letter details appellant's performance while under the supervision of the San Antonio office, including his drug usage and inability to successfully participate in various rehabilitation programs. The writer of the letter concludes that "[t]hese events would indicate this individual's inability and/or desire to maintain a drug free status in the community and abide by the terms of his parole . . . ." and recommends that appellant's federal parole be revoked.

The third document is a copy of a warrant application dated October 23, 1973, recommending that appellant's federal parole be revoked due to his admitted use of narcotics and failure to participate in treatment programs. The warrant application is signed by Steve D. Johnston, to whom the letter of September 26, referred to above, is addressed.

The fourth document is a copy of another letter to Steve D. Johnston. This letter is dated January 28, 1974, and is from Harvey H. Whitehill, a United States probation officer in San Antonio. In this letter, Whitehill refers to a conversation he had with appellant, during which appellant admitted being addicted to heroin.

The fifth document is a copy of a "Terminal Report" from Kerper House in San Antonio, signed by Bonnie J. Cromwell, Director. Kerper House is apparently another drug addiction treatment facility. A portion of this report reads as follows:

"*Program Progress*:

"Mr. Porter resided at the Kerper House for less than a week. He fixed with heroin three days after his arrival. He was a disruptive figure to the program and demonstrated 'paranoia' at a group counseling session. Due to his drug addiction and recidivist practices, progress was not made toward the accomplishment of any of the goals set for Mr. Porter.

"*Resocialization*:

"Mr. Porter's transition back into the community was not a success . . . . He expressed a complete feeling of 'helplessness' in regards to his drug usage. He plead [sic] for 'another chance' and seems to want badly to go straight; yet at the same time admitted to 'uncontrollable' behavior.

"*Prognosis*:

"Based on Mr. Porter's participation in our program and knowledge of his previous arrests and penitentiary record, it is felt by our Staff that his future looks grim . . . His employment, educational, social, and familial history is extremely poor and this is apparently due to his serious narcotic addiction. He demonstrates a number of serious mental and emotional handicaps. Rehabilitative rating is very poor.".

On cross-examination, defense counsel elicited from the witness that his access to the writings in issue was equal to that of twelve other parole officers, eight secretaries, the Deputy Director of the San Antonio office, and the "Chief" of the Western District Parole Department in El Paso. When asked whether he personally kept the files, the witness stated that the "probation department is the custodian of records for the United States Courts as well as the Board of Paroles involving an individual under the supervision of either . . ."

■ The right to cross-examine witnesses is implicit within the right to confrontation provided by the Sixth Amendment to the Constitution of the United States as applied through the Fourteenth Amendment. *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1967); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). The right to confront and cross-examine witnesses has also been held to be essential to due process and a fair trial within the provisions of the Fourteenth Amendment to the Constitution of the United States. E. g., *In Re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) and *Chambers v. Mississippi*, supra.

■ However, the rights of confrontation and cross-examination are not absolute. *Chambers v. Mississippi*, supra; *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Dutton v. Evans*, supra; *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Confrontation and cross-examination are not essential where the evidence bears the indicia of reliability sufficient to insure the integrity of the fact finding process. *Dutton v. Evans*, supra; *Mancusi v. Stubbs*, supra; *Kay v. United States*, 255 F.2d 476 (4th Cir. 1958). Cf. *Chambers v. Mississippi*, supra; *California v. Green*, supra; *Berger v. California*, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).

■ If the rights of confrontation and cross-examination were absolute, none of the exceptions to the hearsay rule would apply in criminal cases. In almost every criminal case, evidence is admitted under one of the exceptions to the hearsay rule. Official written instruments are admissible as one of the well recognized exceptions. They are admissible in this state under the provisions of Article 3731a, V.A.C.S., which reads, in pertinent part:

"Sec. 2. Any written instrument which is permitted or required by law to be made, filed, kept or recorded (including but not limited to certificate, written statement, contract, deed, conveyance, lease, concession, covenant, grant, record, return, report or recorded event) by an

officer . . . of the United States . . . or of any governmental subdivision of any of the foregoing, or by his deputy or employee . . . in the performance of the functions of his office, shall so far as relevant, be admitted in the courts of this State as evidence of the matter stated therein . . ."

The State contends that the five documents in question are official written instruments, and were properly admitted under this statute.

Article 3731a, supra, is applicable in criminal cases. *Phillips v. State*, 538 S.W.2d 116 (Tex.Cr.App.1976); *Trevino v. State*, 464 S.W.2d 859 (Tex.Cr.App.1971); *Spencer v. State*, 164 Tex.Cr.R. 464, 300 S.W.2d 950 (1957); *Fite v. State*, 158 Tex. Cr.R. 611, 259 S.W.2d 198 (1953). However, in some circumstances, evidence within the ambit of a recognized exception to the hearsay rule is not admissible if it does not have the indicia of reliability sufficient to insure the integrity of the fact finding process commensurate with the constitutional rights of confrontation and cross-examination. *Chambers v. Mississippi*, supra; *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Berger v. California*, supra; *McDaniel v. United States*, 343 F.2d 785 (5th Cir. 1965); *United States v. Lipscomb*, 435 F.2d 795 (5th Cir. 1970); *Phillips v. Neil*, 452 F.2d 337 (6th Cir. 1971).

This Court has previously recognized that evidence within the scope of the Business Records Act, Article 3737e, V.A.C.S., is not admissible if it does not have sufficient indicia of reliability. *Coulter v. State*, 494 S.W.2d 876 (Tex.Cr.App.1973); *Battee v. State*, 543 S.W.2d 91 (Tex.Cr.App.1976); *Sisson v. State*, 561 S.W.2d 197 (Tex.Cr. App.1978). The same rule is applicable to official records sought to be admitted under Article 3731a, supra. It must be determined in each instance whether the particular record is of such trustworthiness as to guarantee the same protection provided by the constitutional rights of confrontation and cross-examination. The particular record and its relationship to the particular case in which it is offered are a part of the circumstances to be considered in determining whether the record has the indispensable fundamental trustworthiness necessary for its admission into evidence. See e. g., *United States v. Lipscomb*, supra; *McDaniel v. United States*, supra; *People v. Aguilar*, 16 Cal.App.3d 1001, 94 Cal.Rptr. 492 (1971); *Johnson v. State*, 253 A.2d 206 (Del. 1969); *People v. Crant*, 42 Misc.2d 350, 248 N.Y.S.2d 310 (1964).

The documents admitted in this case are letters, or copies of letters, which were kept or received in the District Parole Office in San Antonio. These letters contain hearsay upon hearsay, as well as opinions regarding appellant's mental and physical condition and his amenability to rehabilitation. The sources of these opinions are in most cases unnamed, and in no case are the authors or the unnamed sources shown to be competent to make the statements attributed to them. It defies reason to suggest that these letters, merely because they were collected in a file in a government office, have the indicia of reliability sufficient to insure the integrity of the fact finding process commensurate with the constitutional rights of confrontation and cross-examination. See *Estes v. State*, 162 Tex.Cr.R. 122, 283 S.W.2d 52 (1955); *Hartman v. Harder*, 322 S.W.2d 555 (Tex. Civ.App.—Amarillo 1959, no writ).

*Texas Dept. of Public Safety v. Nesmith*, 559 S.W.2d 443 (Tex.Civ.App.—Corpus Christi 1977, no writ), was a driver's license suspension case. The Department sought to prove the appellee's responsibility for the accident in question by introducing certain departmental records. The words of the Court in *Nesmith* are fully applicable to the instant case:

"Tex.Rev.Civ.Stat.Ann. art. 3731a (Supp.1977), which permits the introduction of official public records or certified copies thereof in evidence, is an exception to the hearsay rule. See 24 Tex.Jur.2d, Evidence, Sec. 578. However, the contents of such records, when such records are offered in evidence, are subject to the same rules of evidence respecting relevancy, competency, or materiality as any

other evidence. *Smith v. Riviere*, 248 S.W.2d 526 (Tex.Civ.App.—Texarkana 1951, no writ). Therefore, even though the official public records or certified copies thereof are admissible in evidence, that does not mean that ex parte statements, hearsay, conclusions and opinions contained therein are admissible. Furthermore, the admissibility of the records does not authorize the consideration of any hearsay based on hearsay, or of any conclusion therein which is not shown to have been made by an official or employee of the Department who had personal knowledge of the facts upon which the conclusion is based. *Smith v. Riviere*, supra; *Texon Drilling Co. v. Elliff*, 216 S.W.2d 824 (Tex.Civ.App.—San Antonio 1948, writ ref'd n. r. e.)."

Not only did the admission of the writings in question deny appellant his rights of confrontation and cross-examination, it is by no means clear that the writings are official written instruments within the meaning of Article 3731a, supra. The special trustworthiness of official writings is found in the declarant's official duty and the high probability that the duty to make an accurate report has been performed. McCormick, Evidence, Sec. 315 (2d ed. 1972). This is implicit in the examples of official writings set out in Sec. 2 of the statute: certificate, written statement, contract, deed, conveyance, lease, concession, covenant, grant, record, return, report, or recorded event. From this it can be concluded that the act contemplates admission of writings which are kept or made by an officer of the United States, or an officer of a governmental subdivision of the United States, in the systematic administration of his office.

Clearly, the recordation pursuant to law of official acts, events, or matters relating to the operations of a federal parole office or to particular parolees, about which there can be no reasonable dispute, is done in the performance of the functions of a government officer's official duties. Cf. *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *Loper v. Andrews*, 404 S.W.2d 300 (Tex.Sup.1966). But the fact that a district parole office makes a practice of maintaining in a file any opinion or conclusion concerning a parolee within the office's charge, regardless of its source, does not necessarily put those statements in the class of records which are kept in the performance of the functions of a government officer's duties. To hold that such informal records are included within Article 3731a, supra, would pervert a rule "designed to facilitate admission of records which experience has shown to be quite trustworthy." *Palmer v. Hoffman*, supra, 318 U.S. at 113, 63 S.Ct. at 480.

It should also be noted that two of the writings introduced by the State, the letter dated September 26, 1973, and the warrant application dated October 23, 1973, were prepared with the specific view toward revoking appellant's federal parole, a quasi-criminal proceeding. Such utility as these writings possess relates primarily to such proceeding, and only incidentally to the systematic performance of the functions of the federal parole office. See *Palmer v. Hoffman*, supra; *United States v. Ware*, 247 F.2d 698 (7th Cir. 1957); *Coulter v. State*, supra.

■ In its brief, the State argues that the trial court had discretion to admit the writings in question under Article 37.071(a), V.A.C.C.P., which states:

"Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment. The proceeding shall be conducted in the trial court before the trial jury as soon as practicable. *In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence.* This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death." (Emphasis added.)

It is true that the trial court at the punishment phase of a capital murder trial has wide discretion in admitting or excluding evidence. See *Hammett v. State*, —— S.W.2d —— (Tex.Cr.App. 1979); *Wilder and Armour v. State*, Tex.Cr.App. (No. 57,-848, decided 1/31/79); *Hovila v. State*, 562 S.W.2d 243 (Tex.Cr.App.1978); *Brown v. State*, 554 S.W.2d 677 (Tex.Cr.App.1977); *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App. 1975), affirmed, *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). However, this discretion extends only to the question of the *relevance* of the facts sought to be proved. Article 37.071(a), supra, does not alter the rules of evidence insofar as the *manner* of proof is concerned. While the facts contained in the documents in question may have been relevant to punishment, the manner in which the State sought to prove those facts denied appellant his constitutional rights of confrontation and cross-examination.

The judgment is reversed and the cause remanded.