Hubbard et al v. State 






NO. 10-90-043-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          JAY HUBBARD, ET AL,
                                                                                            Appellants
          v.

          THE STATE OF TEXAS,
                                                                                            Appellee

* * * * * * * * * * * * *

 From County Court
Robertson County, Texas
Trial Court # 89-29C

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
          This is an appeal from a default judgment in a bail bond forfeiture case. Appellants,
principal and sureties on the bond, claim the citation was defective and that attorney's fees and
interest were not proper. We will reverse and render judgment.
          In the first point of error, Appellants claim the citations did not notify Appellants to appear
and show cause why the judgment nisi of bond forfeiture should not be made final.
          The statutory provisions concerning citations in bond forfeitures are found in Articles
22.03 and 22.04 of the Code of Criminal Procedure which provide as follows:
Upon entry of judgment, a citation shall issue forthwith notifying the
sureties of the defendant, if any, that the bond has been forfeited, and requiring
them to appear and show cause why the judgment should not be made final.
Tex. Code Crim. Proc. Ann. art. 22.03 (Vernon 1989).
A citation shall be sufficient if it be in the form provided for citations in
civil cases in such court; provided, however, that a copy of the judgment of
forfeiture entered by the court shall be attached to the citation and the citation shall
notify the parties cited to appear and show cause why the judgment of forfeiture
should not be made final.
Id. at art. 22.04 (emphasis added).
          The citation in this case consisted of a civil citation with a copy of the judgment nisi
attached. The citation failed to notify the parties to appear and show cause why the judgment of
forfeiture should not be made final, as required by Art. 22.04.
          Bond forfeitures are entirely statutory. Blue v. State, 170 Tex. Crim. 449, 341 S.W.2d
917, 919 (1960). In Blue the citation omitted similar language as was omitted from the citation
in this case and the court ruled the judgment of forfeiture was invalid. The State erroneously
contends that by attaching a copy of the judgment nisi to the citation satisfies the statutory
requirement that the required language be in the citation. In Gilbert v. State the court held that
"nothing essential by statute to the service of a citation should be left to inference in order to
sustain a judgment by default . . . ." Gilbert v. State, 623 S.W.2d 349, 354 (Tex. Crim. App.
1981). Accordingly, we hold that the language in Art. 22.04 is mandatory. We further hold that
attaching a copy of the judgment nisi, which includes the statutorily required language, to the
citation is insufficient to meet the mandatory requirement that the citation notify the parties to
appear and show cause. Tex. Code Crim. Proc. Ann. art. 22.04 (Vernon 1989). We sustain
point one.
          In the second point, Appellants contend the court erred in entering judgment nisi when the
record shows the principal was incarcerated in the Robertson County jail on the date the judgment
was entered. Judgment nisi forfeiting the bond was entered September 27, 1989, the same date
the principal was placed in the Robertson County jail. Final judgment forfeiting the bond was
entered by default on December 4. The State relies on the decision in Armadillo Bail Bonds v.
State and contends that Art. 22.16 of the Code of Criminal Procedure concerning remittitur in
bond forfeitures is unconstitutional. See Tex. Code Crim. Proc. Ann. art. 22.16 (Vernon 1989);
Armadillo Bail Bonds v. State, 802 S.W.2d 237 (Tex. Crim. App. 1990). In Armadillo, the court
found Art. 26.16(c)(2) unconstitutional; however, that holding is not relevant to this case since
the court here did not delay the final judgment as provided by Art. 26.16(c)(2). Appellants' point
two is sustained.
          Next, Appellants contend the court erred in entering judgment for attorney's fees. Bail
bond forfeitures are entirely statutory. Blue, 341 S.W.2d at 919. There being no statutes
providing for the recovery of attorney's fees in bond forfeitures, we follow our previous decision
in Pitts v. State, 736 S.W.2d 191, 192 (Tex. App.--Waco 1987, no writ). Point three is sustained.
          In the final point of error the Appellants contend the court erred in awarding pre-judgment
and post-judgment interest. We agree. The recent decision, Bailout Bonding Company v. State,
797 S.W.2d 275 (Tex. App.--Dallas 1990, pet. ref'd), holds that pre-judgment and post-judgment
interest which are authorized in civil cases, are not recoverable in bond forfeiture proceedings,
which are criminal in nature. Id. at 277. Bailout further holds that the only time pre-judgment
interest may be recovered is when the court has ordered a remittitur in accordance with Art.
26.16(a). Id. at 278. Appellants' final point is sustained. 
          We reverse the judgment of the trial court and render judgment that the State take nothing.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings and
          Justice Vance
Reversed and rendered
Opinion delivered and filed April 25, 1991
Publish 



 six blacks were on the venire panel and that the State struck four of them. Two were seated
on the jury. The court found the State's reasons for striking the jurors were race-neutral and
overruled the motion. 
      Although Nellums was charged with capital murder, the State did not seek the death penalty. 
Accordingly, voir dire was conducted as with any other felony. After the parties made their
strikes, Nellums stated his Batson motion and called the prosecutor to testify as to her reasons for
striking panel members Green, Gilbert, Franks, and Whaley. Several jurors, including Green, had
been questioned separately because they had indicated that they knew Nellums or his family. 
      The prosecutor testified that she struck Green because he was good friends with Nellums'
family. Although Green had stated that he could be fair, the prosecutor testified that she did not
believe he was being truthful. Green was single, and the prosecutor stated that she had planned to
strike single or divorced males.
      She struck Gilbert because he was nineteen years old. In addition, the court had instructed him
to return to the courtroom after lunch the previous day. Instead, he had “listened to his sister” who
had apparently told him he did not have to return that day. The prosecutor stated that she did not
want a juror who “was stupid enough to listen to his sister rather than the Judge when his sister
wasn't even in the courtroom.”
      The prosecutor testified that she had remembered Franks as a white male. She struck him
because he was divorced and had no children. 
      The prosecutor struck Whaley because she “glared” at her during voir dire, was a friend of
the Nellums family, and knew some of the facts of the case.
      Because the court ruled on the ultimate question of intentional discrimination, we need not
review the issue of whether the defendant established a prima facie case. Hill v. State, 827 S.W.2d
860, 865 (Tex. Crim. App. 1992). We review the record of the Batson hearing and the voir dire
examination in the light most favorable to the trial court's ruling. Adanandus v. State, 866 S.W.2d
210, 223 (Tex. Crim. App. 1993). We will not disturb that ruling unless it is clearly erroneous. 
Id. Our review includes the racial makeup of the venire, the voir dire examination, the
prosecutor’s explanations, and any rebuttal and impeaching evidence. See Chambers v. State, 866
S.W.2d 9, 23 (Tex. Crim. App. 1993). Absent some evidence rebutting the State's race-neutral
explanation, we will not disturb the court's finding that the State's explanation is legitimate. Id.
at 25; Pondexter v. State, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996).
      The prosecutor stated her race-neutral reasons for making her peremptory strikes. Nellums
did not rebut those reasons. The record is silent about whether similarly situated non-minority
panel members were not struck. Having reviewed the record, we cannot say that the court's
determination is clearly erroneous. Adanandus, 866 S.W.2d at 223; see also Yarborough v. State,
No. 0235-94, slip op. at 3 (Tex. Crim. App. June 11, 1997).



EXTRANEOUS OFFENSES
      Nellums' second point asserts that the court erred in admitting evidence of extraneous offenses. 
After the defense rested, the State moved to reopen. The State recalled Bradley and Charity
Nellums, Ruby's and Nellums' nine-year-old child. Charity testified that when she was eight, her
father had held a knife to Ruby's throat. Charity testified that he had used the same knife that he
later used to murder her mother. Bradley testified that she had twice seen Nellums hitting or
beating Ruby. 
      Nellums objected that the testimony was not relevant and was prejudicial. The State argued
that the evidence was admissible to show Nellums' intent to commit aggravated assault.
      Rule 404(b) of the Rules of Criminal Evidence precludes evidence of extraneous acts unless
used for an “other purpose,” such as to prove motive, opportunity, intent, preparation, plan,
knowledge or identity. Tex. R. Crim. Evid. 404(b). However, Article 38.36 of the Code of
Criminal Procedure, “Evidence in Prosecution of Murder,” provides in part: 
(a) In all prosecutions for murder, the state or the defendant shall be permitted to offer
testimony as to all relevant facts and circumstances surrounding the killing and the previous
relationship existing between the accused and the deceased, together with all relevant facts and
circumstances going to show the condition of the mind of the accused at the time of the
offense. 
Tex. Code Crim. Proc. Ann. art. 38.36(a) (Vernon Supp. 1997). 
      Before a court may properly admit evidence of an extraneous offense under article 38.36, it
must find the evidence relevant to a material issue other than the defendant's character. Hernandez
v. State, 914 S.W.2d 226, 232 (Tex. App.—Waco 1996, no pet.). The material issues in a
homicide case are determined by the theories of the prosecution and the defense. Id. In reviewing 
the court's determination of relevancy, we uphold the ruling absent an abuse of discretion. 
Montgomery v. State, 810 S.W.2d 372, 390-91 (Tex. Crim. App. 1990) (on rehearing). As long
as the court's ruling is within the zone of reasonableness, we will not intercede. Id. at 391;
Hernandez, 914 S.W.2d at 233. 
      The State charged Nellums with intentionally causing Ruby's death by stabbing. Nellums'
theory was that he was overcome by sudden passion. The evidence of Nellums' prior assaults is
relevant to the previous relationship existing between Nellums and Ruby. Tex. Code Crim. Proc.
Ann. art. 38.36(a). The evidence tends to make it more probable that it was Nellums' conscious
objective to injure Ruby. Hernandez, 914 S.W.2d at 233. It tends to rebut his defensive theory
that the crime occurred under the influence of sudden passion. Id. The court did not abuse its
discretion in determining that the prior assaults were relevant.
      We next address whether the probative value of the extraneous acts is substantially outweighed
by the danger of unfair prejudice. Tex. R. Crim. Evid. 403. Rule 403 favors admissibility of
relevant evidence, and again, we must uphold the court's ruling absent an abuse of discretion. 
Hernandez, 914 S.W.2d at 233. The jury had already heard evidence that Nellums' had been under
a restraining order, had committed criminal trespass, and that the police had been called the
morning of the murder to order Nellums away from Ruby's home. We overrule point two.
PHOTOGRAPHS
      Nellums' third point asserts that the court erred in admitting photographs without requiring 
the proper predicate. He also argues that the probative value of the photographs was outweighed
by their prejudicial nature.
      Winifred Smith, a Madison County deputy sheriff, was dispatched to the scene. When he
arrived, he found Ruby lying on her back in the yard surrounded by her mother and children. 
Smith saw that Ruby had several lacerations on her chest and her eye. He observed blood around
her feet, arms, and neck. He could not detect a pulse nor could he determine whether she was
breathing. He called for emergency medical services. 
      Smith identified Exhibits 14 and 15 as photographs taken at the scene. Nellums objected that
the proper predicate had not been laid and that the photographs were prejudicial and inflammatory. 
The court overruled the objection. Exhibits 14 and 15 are photographs of Ruby's body lying in the
grass.
      The State later offered Exhibits 73-89 through the medical examiner, Dr. Charles Odom. 
Odom testified that he performed the autopsy on Ruby's body. He identified the exhibits as
photographs taken during the autopsy depicting the injuries inflicted. Nellums objected that the
photographs were prejudicial. He also objected that the photographs were irrelevant because he
was not disputing that Ruby had died from stab wounds that he had inflicted. The court overruled
the objections.
      Admissibility of allegedly inflammatory photographs is governed by the rules of evidence. 
Hicks v. State, 860 S.W.2d 419, 426 (Tex. Crim. App. 1993). In determining admissibility of
photographs under Rule of Criminal Evidence 403, the following factors are relevant for
consideration:
... number of exhibits offered, their gruesomeness, their detail, their size, whether they are
black and white or color, whether they are close-up, whether the body is naked or clothed[,
and] ... the availability of other means of proof and the circumstances unique to each individual
case....
 
Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App.1991). Generally, photos are admissible
when verbal testimony as to the matters depicted in the photos is also admissible. Hicks, 860
S.W.2d at 426; Hernandez v. State, 819 S.W.2d 806, 819 (Tex. Crim. App.1991). “Ultimately,
the admissibility of photographs over any challenge is within the sound discretion of the trial
judge.” Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). 
      Exhibits 14 and 15 depict Ruby's body at the scene of the crime. The photographs depict the
same facts described in Officer Smith's testimony. 
      The autopsy photographs depict the numerous stab wounds inflicted. Dr. Odom identified the
photographs and testified as to which were defensive wounds and which were lethal wounds. He
testified that the lethal injuries were on the back of the right shoulder. These stab wounds severed
the aorta in Ruby's neck and injured major organs. He testified to the strength of the blows
required to sever an aorta and puncture a lung. Odom identified the defensive wounds to Ruby's
hands and legs. He testified that leg wounds are fairly rare and suggested that Ruby had used her
legs defensively kicking her attacker.
      The photographs are gruesome, but they depict the reality of the crime committed. Id. at 519. 
Nothing is depicted in the photographs which was not included in the testimony of the witnesses. 
Id. Although Ruby suffered 36 stab wounds, less than half that number of autopsy photographs
were introduced. Each photograph was referred to by Odom in describing the manner or nature
of Ruby's injuries and ultimate death.
      The photographs are not so gruesome as to be unfairly prejudicial. See Emery v. State, 881
S.W.2d 702, 710 ( Tex. Crim. App. 1994). The court did not abuse its discretion in admitting the
photographs. Id. We overrule point three.
PROBATION FILE
      Nellums' fourth point asserts that the court erred in admitting his probation file into evidence
during the punishment phase. The State sought to admit Nellums' probation file from a prior
forgery conviction. The State sought to admit the file as business and/or public records and as
statements against interest. Nellums' objected that the file was hearsay which did not fall within
a hearsay exception. 
      Rodney Poe, chief probation officer of Madison County, testified that he had made all of the
handwritten entries in Nellums' probation file. Poe testified that the probation records were kept
in the regular course of business, that the events were recorded by someone with personal
knowledge, that they were recorded at or near the time of the event, and that he was the custodian
of the records. The court admitted the probation file.
      Poe testified to Nellums' violations of the conditions of probation. He stated that Nellums had
tested positive for cocaine and opiates within one month of being placed on probation. Poe referred
Nellums to substance abuse counseling, but Nellums did not “follow through” on the program. 
Poe testified that Nellums was later arrested for unauthorized use of a motor vehicle. Poe stated
that Nellums did not pay any of his court-ordered probation fees.
      The majority of the “hearsay” contained in Nellums' probation file was testified to by Poe
without objection. Nellums cites cases in which the courts found error in the admission of parole
records in the guilt-innocense phase. Porter v. State, 578 S.W.2d 742 (Tex. Crim. App. 1979); 
Philpot v. State, 897 S.W.2d 848 (Tex. App.—Dallas 1995, pet ref'd). In both cases, the
reviewing court determined that the records lacked trustworthiness and reliability. In Porter, the
file contained letters from “unknown sources.” 578 S.W.2d at 746. In Philpot, the file contained
test results from an independent laboratory. 897 S.W.2d at 852. Thus in each case the evidence
failed to satisfy the requirements of business records.
      Here, Poe testified to facts based on his personal knowledge. This evidence does not present
the question of lack of trustworthiness and reliability as did the records in Porter and Philpot. We
agree that other parts of the file contained hearsay that did not fall within an exception. However,
we do not find harm. Tex. R. App. P. 81(b)(2). We overrule point four.
CLOSING ARGUMENT
      Finally, Nellums complains of the prosecutor's statement during punishment argument: 
As I told you during voir dire, Ruby Nellums had a right to protect herself in that home
and he knew he wasn't wanted there. It's not sudden passion. The other thing that tells you
it's not sudden passion evidence in this case is when after he stabs her thirty-six times and she
falls to the ground do you hear any evidence that he said oh, baby, I'm sorry, I'm sorry, at that
moment, God forgive me, God forgive me? No.
 
Nellums objected that the argument was a comment on his failure to testify. 
      A defendant's failure to testify may not be alluded to or commented on by the State. Tex.
Code Crim. Proc. Ann. art. 38.08 (Vernon 1979). This prohibition applies to both the guilt-innocense and the punishment phases. Brown v. State, 617 S.W.2d 234, 236-37 (Tex. Crim. App.
1991). For an argument to violate article 38.08, the language must have been “manifestly intended
or was of such character that the jury would naturally and necessarily take it to be a comment on
the accused's failure to testify.” Dickson v. State, 685 S.W.2d 320, 323 (Tex. Crim. App. 1984). 
A remark which alludes to evidence which only the defendant could supply is prohibited. Patrick
v. State, 906 S.W.2d 481, 490 (Tex. Crim. App. 1995). 
      The evidence showed that Nellums stabbed Ruby in front of her mother and her children. 
Ruby's mother and the children testified to the stabbing. Prior to the argument complained of, the
prosecutor had argued:
His statement shows that he didn't commit that murder in sudden passion. Because he
says he went over there to talk to her. He wasn't mad. He committed this murder cold
blooded. You heard Ms. Bradley and the others say he wasn't saying anything when he was
stabbing her. He wasn't saying I can't stand you, why are you with that man, you know
you're dirt. He didn't say anything. He was just stabbing her and stabbing her and stabbing
her.
 
The State's comments, in context, are not manifestly intended as a comment on Nellums' failure
to testify. Id. Four others were present when Nellums committed the crime and could have
testified to his words or the absence of words. See Robinson v. State, 888 S.W.2d 473, 490 (Tex.
Crim. App. 1994). The State's comments are a deduction from the evidence presented. 
      We overrule point five. We affirm the judgment.
 
 
                                                                                 BILL VANCE
                                                                                 Justice
 
Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed August 1, 1997
Do not publish