# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00337-CR

**Bobby Wayne Blackwell, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT NO. CR-00-024, HONORABLE JOHN M. DELANEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Bobby Wayne Blackwell of driving while intoxicated, third offense, and the district court assessed sentence at forty-five years in prison. *See* Tex. Pen. Code Ann. §§ 49.04(a) (West 2003) & .09(b) (West Supp. 2004-05). On appeal, Blackwell challenges the admission of blood-test results revealing that he was legally intoxicated. *See id*. § 49.01(2)(B) (West 2003). He complains that the State failed to prove that a qualified person drew his blood or followed procedures that made the test results admissible through an exception to the hearsay rule. We will affirm the judgment.

## BACKGROUND

Blackwell was seriously injured in a multiple vehicle collision on October 16, 1999, in Dripping Springs. Several witnesses testified that they saw Blackwell driving recklessly shortly before the collision. Specifically, these witnesses testified that Blackwell was out of control as he traveled west from Austin along an undivided, four-lane stretch of U.S. Highway 290, was driving faster than the speed limit and surrounding traffic, and was swerving across lanes of traffic and into the paths of oncoming cars. Hays County Deputy Sheriff James Young testified that he responded to a call regarding an out-of-control driver and drove east from Dripping Springs. Young first saw Blackwell traveling toward him at about eighty-five miles per hour while Blackwell was rounding a curve; Blackwell struggled to negotiate the curve and crossed the double-yellow center stripe, missing the deputy's car by about a foot. Young then turned to pursue Blackwell. He then saw Blackwell swerve into oncoming traffic and hit several vehicles. Later examination of Blackwell revealed that he suffered fractures in his sinuses and pelvis and injuries to his liver and spleen. Other witnesses involved in the collision testified that they each avoided serious injury, but that at least one of their vehicles was declared a total loss.

Sean Davis, a Department of Public Safety trooper who investigated the collision, testified about his observations at the scene. Davis testified that there were no skid marks indicating evasive action by Blackwell. He testified that Blackwell yelled at emergency personnel while they were freeing him from his wrecked car. There was a strong smell of beer about Blackwell. Blackwell's car contained more than forty cans of beer, many of them empty, although all but one

2

of the empties appeared to have been ruptured during the collision. Davis testified that, when removed from the car, Blackwell smelled like he had beer on his person and on his breath. Blackwell had to be restrained before being transported by helicopter to the hospital. Davis said that, although some people resist medical treatment and Blackwell may have been in shock, Blackwell's resistance was unusual in light of the severity of his injuries, which included a broken pelvis. Davis said that he believed that Blackwell was driving while intoxicated and that he had planned to arrest Blackwell, but delayed in deference to Blackwell's condition and need for treatment. Davis said he did not offer Blackwell a breath test at the scene and did not seek an arrest warrant until more than three days after the collision.

Ben Coopwood, the trauma surgeon who treated Blackwell, testified about procedures used in treating the fractures in Blackwell's sinuses and pelvis and the injuries to his liver and spleen. Coopwood testified that hospital personnel tested Blackwell's blood to determine whether he was bleeding internally and also whether he was intoxicated; Coopwood explained that the test for intoxication helps to diagnose potential causes of a patient's nonresponsiveness and to determine a course of treatment regarding potential brain swelling. These blood-alcohol test results were admitted over Blackwell's objection. Coopwood testified that Blackwell's blood-alcohol concentration was 0.25 grams per liter—a ratio more than three times the 0.08 legal threshold for intoxication. *See* Tex. Pen. Code Ann. § 49.01(2)(B). Coopwood admitted that he did not see the blood being drawn. He testified that the signature on the blood-test laboratory report of the person in the "blood collected by" line was "Michelle"—he could not read the last name—and testified that he did not remember a registered nurse (RN) or phlebotomist on staff by that name. Coopwood

3

testified that doctors routinely rely on standard testing procedures and the results obtained from them.

## DISCUSSION

Blackwell complains that the district court should have excluded his blood-alcohol test results. He contends that procedures required when taking blood samples from arrested persons who are unconscious or otherwise incapable of refusing a blood test should be extended to persons whom the police intend to arrest. He also contends that admitting the blood-alcohol test results without any evidence as to the qualifications of the person drawing the blood and the procedures used violated his constitutional right to confront and cross-examine witnesses against him. Blackwell argues that the admission of the test results contributed to his conviction.

**Restrictions on persons who may take blood samples**

Blackwell relies on statutory protections that limit the persons who may take blood samples from arrested persons at the request of a peace officer. *See* Tex. Transp. Code Ann. §§ 724.011-.017 (West 1999 & West Supp. 2004-05). Persons arrested for offenses allegedly resulting from their driving while intoxicated are deemed generally to have consented to submit to the taking of a blood specimen for alcohol-content analysis. *See id.* § 724.011(a) (West 1999). An arrested person who is unconscious or otherwise incapable of refusing to submit a sample is deemed not to have withdrawn this implied consent. *Id*. § 724.014(a). But the statute limits the persons who may take samples from a living arrested person who is incapable of refusing to submit a sample. *Id*. § 724.014(c). In those circumstances, "[o]nly a physician, qualified technician [other than an

4

emergency medical technician], chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer . . . ." *Id*. § 724.017(a).

Blackwell is not entitled to the protection of these statutes. These statutes apply to arrested persons, *see id*. § 724.011(a), and Blackwell had not been arrested when the sample was taken. Further, the limitations on the medical personnel who may take samples apply only when the samples are taken "at the request or order of a peace officer." *Id*. § 724.017(a). These limitations do not apply when the tests are conducted by medical personnel solely for medical purposes. *See State v. Hardy*, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997). There is no evidence that the samples in this case were taken at the request of a peace officer. The only evidence in this case demonstrates that the blood sample was taken from Blackwell and the blood-alcohol test performed pursuant to standard medical procedures in order to assess Blackwell's medical condition and to determine the proper course of treatment. The limitations concerning which medical personnel may obtain blood samples from arrested persons incapable of withdrawing consent do not apply here.

**Right to confront and cross-examine witnesses**

Blackwell complains that the lack of evidence regarding the qualifications of the person who drew his blood sample and the procedures used to obtain that blood sample deprived him of his constitutional right to meaningful confrontation and cross-examination of witnesses against him. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. He complains that the evidence is hearsay, and that the lack of evidence regarding the person who took the sample or the procedures used undermines the reliability of the evidence. He contends that the only evidence on this issue was the signature on the records indicating that "Michelle" drew the sample.

5

We review the admission of evidence for an abuse of discretion. *See Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court as long as its ruling was within the "zone of reasonable disagreement." *Green*, 934 S.W.2d at 102; *see Montgomery*, 810 S.W.2d at 391.

The State offered the blood-alcohol test results pursuant to the business-records exception to the hearsay rule, which provides as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. 'Business' as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

Tex. R. Evid. 803(6). When admitting the records, the trial court was required to determine whether the business records had sufficient indicia of reliability or trustworthiness as to guarantee the same protection provided by the constitutional rights of confrontation and cross-examination. *See Porter v. State*, 578 S.W.2d 742, 746 (Tex. Crim. App. 1979).

The blood-alcohol test results were part of a group of records produced by the hospital pursuant to a subpoena. The records were accompanied by the affidavit of the custodian of the hospital's records in which the custodian recites that he kept the records in the regular course of business and that the records were made in the regular course and scope of the hospital's business

at or near the time of the event. *See* Tex. R. Evid. 902(10)(b) (model affidavit). The surgeon who treated Blackwell testified that, although he did not conduct or observe the blood draw, he and other doctors routinely relied on such procedures and records in treating patients. The signature on the blood-test laboratory report of the person who collected the blood and delivered it to the hospital laboratory resembles the signature of the person who signed other records prepared at the same time in the space reserved for the "trauma RN" or "RN." The signature on the blood-test report also appears to have the initials "RN" after the name. There is no evidence that an unauthorized or unqualified person drew the blood or that the persons who drew or tested the blood did their jobs inappropriately.

We conclude that the district court did not abuse its discretion by finding the record of the results of the test of Blackwell's blood-alcohol level sufficiently reliable to be admissible under the business-record exception to the hearsay rule. In any event, even if the admission of the blood-alcohol test results were error, we conclude that it was not harmful. *See* Tex. R. App. P. 44.2. Ample, independent evidence of Blackwell's intoxication was introduced beyond the test results. Several witnesses observed Blackwell driving with excessive speed and lack of control. At least one open beer can was found in the car along with forty other cans. Based on the aroma of beer emanating from Blackwell and his behavior at the collision scene and at the hospital, the peace officer and the surgeon testified that they concluded before the test results were available that Blackwell had been intoxicated while he was driving. We conclude beyond a reasonable doubt that any error in the admission of the test results did not contribute to Blackwell's conviction.

**CONCLUSION**

Having concluded that the district court did not err by admitting the results of Blackwell's blood-alcohol test and, alternatively, that any error was harmless, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   March 10, 2005

Do Not Publish