Charles Edwin PHILPOT, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 05–92–01239–CR.

Court of Appeals of Texas, Dallas.

Feb. 28, 1995.

Rehearing Overruled April 20, 1995.

David W. Coody, Dallas, for appellant.

Donald G. Davis, Asst. Dist. Atty., Dallas, for appellee.

Before THOMAS [1], C.J., and MALONEY and BARBER, JJ.

## OPINION

THOMAS, Chief Justice.

A jury convicted Charles Edwin Philpot, Jr. of possession of amphetamine and as-

---

1. The Honorable Linda Thomas was on the original panel at the time this cause was submitted for decision. Justice Thomas was sworn in as Chief Justice on January 1, 1995.

sessed punishment, enhanced by two prior convictions, at sixty-five years' confinement. The dispositive issue is whether the trial court committed reversible error by admitting certain records from appellant's parole file. We conclude the trial court did commit reversible error; thus, we sustain the point of error. Accordingly, we reverse the trial court's judgment and remand the cause for a new trial.

## FACTUAL BACKGROUND

On January 30, 1991, officers from the Irving Police Department and the Texas Department of Public Safety (DPS) executed a search and arrest warrant. The warrant authorized the officers to search a smaller house located behind a main residence and to arrest appellant. Charles English, an informant for DPS, provided the information that formed the basis for the warrant.

Three individuals were found in the house at the time the warrant was executed. Appellant was arrested a few minutes later and taken into the house. In a back bedroom, the officers discovered a quantity of amphetamine, drug paraphernalia, and various personal items belonging to appellant.

## ADMISSION OF THE PAROLE FILE

The crux of the trial was whether appellant had any connection to the drugs that were found inside the house. The testimony of the State's witnesses conflicted with that of appellant's witnesses in every respect. Because of the issues involved, it is undisputed that appellant's credibility was one of the most crucial issues in the case. The informant was the only witness who could directly place appellant in the room with the drugs. According to the informant, he saw appellant at the house on the afternoon of the raid. The informant testified that appellant was in the back bedroom mixing or "cutting" amphetamine powder.

Appellant maintained he was not in the house on the date in question and presented alibi testimony concerning his whereabouts during the day. Appellant testified he had moved out of the house a few months earlier because he was having problems with his girlfriend. According to appellant, he did not know the drugs were in the house and he did not know to whom they belonged.

The only other evidence directly connecting appellant with the contraband was the testimony of one of the police officers. Officer John Moriarty testified that on the way to the county jail, appellant volunteered the statements that he had gotten a larger quantity of drugs than he normally gets and that the drugs belonged to him. Appellant denied that this conversation ever occurred.

Appellant's defensive theory was that he did not have anything to do with the drugs that were found. He admitted he had a criminal record, but he stated it did not involve drugs. As rebuttal evidence, the State was allowed to introduce appellant's parole certificate and various urinalysis reports. One of the urinalysis tests showed a positive result for amphetamines. Appellant argues the trial court committed reversible error by admitting this exhibit.

### 1. Preservation of Error

 Appellant attacks the reliability of the test results, thus contending that they are not admissible under any hearsay exception. The State argues that we should not address the merits of this argument because the objections were not sufficiently specific to preserve error. We disagree.

Appellant made several objections, both before and during the contested testimony and at the time the exhibit was offered into evidence. The grounds for the objections were:

- the proffered evidence was not proper rebuttal evidence because it did not refute appellant's testimony;

- the evidence was irrelevant or not material to any issue in the case;

- it was extremely prejudicial;

- the reports were evidence of extraneous matters, some of which would constitute possible violations of the law; and

● the urinalysis test results were hearsay documents, which were not properly sponsored.

Admittedly, appellant's trial objections were imprecise. However, it is clear that appellant was relying upon the hearsay nature of the documents and whether the items were properly sponsored. Indeed, "identifying challenged evidence as hearsay or as calling for hearsay should be regarded ... as a sufficiently specific objection, [in all] except the most unusual circumstances." *Lankston v. State*, 827 S.W.2d 907, 910 (Tex.Crim.App. 1992). As we have learned from the court of criminal appeals, "where the correct ground for exclusion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection." *See Lankston*, 827 S.W.2d at 908 (quoting *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App. 1977)).

We conclude appellant's objections, when taken in the context of the proceedings, sufficiently informed both the judge and the prosecutor that the predicate as presented was not sufficient to allow the complained-of evidence to be admitted under a statutory hearsay exception. Thus, we hold this complaint has been preserved for review.

**2. Admissibility of the Evidence**

It is undisputed that the complained-of documents constituted hearsay statements.[2] We further note the file contained statements that were hearsay within hearsay. Hearsay is not admissible except as provided by statute or the Texas Rules of Criminal Evidence. *See* TEX.R.CRIM.EVID. 802. Further, to admit multiple-level hearsay statements, each statement must independently be admissible. *See* TEX.R.CRIM.EVID. 805.

The State argues the evidence was admissible as a business-records exception to the hearsay rule. Further, the State contends the evidence was relevant to rebut appellant's false or misleading testimony concerning whether he was required to submit to regular urinalysis tests and his past or present drug use.

Appellant counters the drug test results do not qualify under any hearsay exception because the test report lacks "indicia of reliability." Specifically, appellant complains the report containing the positive drug test results was "anonymously authored," and there was no evidence concerning whether the person who prepared the report was qualified "to make that expert scientific conclusion." In support of this argument, appellant relies on *Porter v. State*, 578 S.W.2d 742 (Tex.Crim.App.1979).

It is difficult to determine whether the State was offering the exhibit as a hearsay exception under rule 803(6) or rule 803(8) of the rules of criminal evidence. Whenever appellant raised the hearsay objection and the fact the records were not properly sponsored, the State responded: "Public record, Your Honor, kept in the normal course of business." We note, however, that in laying the foundation for the admission of this exhibit, the State focused on the predicate for "records kept in the ordinary course of business" rather than the requirements for public records and reports. Nevertheless, we will address the admissibility of the evidence under both provisions.

**A. Business–Records Exception**

To establish the predicate for admissibility as a business-record exception, the proponent must establish:

● the record was made and kept in the course of a regularly conducted business activity;

● it was the regular practice of that business activity to make the record;

● the record was made at or near the time of the event being recorded; and

● the person making the record or submitting the information had personal knowledge of the events being recorded.

2. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d).

Tex.R.Crim.Evid. 803(6). However, evidence that qualifies under the business-records exception may still be excluded if the evidence does not have adequate indicia of trustworthiness. *See* Tex.R.Crim.Evid. 803(6); *Armijo v. State,* 751 S.W.2d 950, 952–53 (Tex. App.—Amarillo 1988, no pet.). We conclude the records were not admissible under rule 803(6).

In this case, the sponsoring witness was a parole officer for the Board of Pardons and Paroles. This witness provided all the predicate testimony for business records of this organization. However, as to the test results from the independent laboratory, there is no evidence that establishes reliability or trustworthiness. Thus, we conclude the test results were not admissible under the business-records exception. In reaching this conclusion, we find the reasoning of *Porter* to be particularly applicable.

In *Porter,* the trial court admitted letters, reports, and documents from the defendant's federal parole file. The complained-of documents pertained to Porter's supervision and progress while on parole. The court of criminal appeals reversed the conviction. The court determined that although certain hearsay evidence may fall within a recognized exception, such evidence is not admissible if it does not have the indicia of reliability sufficient to ensure the integrity of the fact-finding process. *Porter,* 578 S.W.2d at 746. Specifically, the court held:

> These letters contain hearsay upon hearsay, as well as opinions regarding [Porter's] mental and physical condition and his amenability to rehabilitation. The sources of these opinions are in most cases unnamed, and in no case are the authors or the unnamed sources shown to be competent to make the statements attributed to them. It defies reason to suggest that these letters, merely because they were collected in a file in a government office, have the indicia of reliability sufficient to insure the integrity of the fact finding

process commensurate with the constitutional rights of confrontation and cross-examination.

*Porter,* 578 S.W.2d at 746; *see also Trevino v. State,* 815 S.W.2d 592, 597–98 (Tex.Crim. App.1991) (admissibility of Texas Youth Council files), *rev'd on other grounds,* 503 U.S. 562, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992).

Although the sponsoring witness in this case was qualified to administer drug tests, there is no evidence establishing a predicate for the complained-of test results.[3] Specifically, there is no evidence the tests conducted were standard tests for this controlled substance, the entries were made by a person who had personal knowledge of the test and the test results, or the test results were records kept in the usual course of business of the laboratory. *See Strickland v. State,* 784 S.W.2d 549, 553 (Tex.App.—Texarkana 1990, pet. ref'd) (proper predicate for establishing admissibility of laboratory reports).

## B. Public–Records Exception

■ Likewise, the report also fails to meet the public-records exception to the hearsay rule. The foundation for a public record or report under rule 803(8) need only establish that the document is authentic and that it contains one of the three types of matters specified in the rule, unless the source of information or other circumstances indicate a lack of trustworthiness. The three matters specified by the rule are:

(A) the activities of the office or agency, or

(B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel, or

(C) against the state, factual findings resulting from an investigation made pursuant to authority granted by law.

Tex.R.Crim.Evid. 803(8).

This report does not set forth the activities of the parole office nor is it a record against

---

3. We note that the witness administered one of the tests contained in the exhibit. She did not, however, have any knowledge about the test that

showed a positive result for amphetamines. This test was administered by an independent laboratory.

the state. Furthermore, the record contains no evidence that the laboratory had a duty imposed by law to report the urinalysis results. Accordingly, the document fails to address any of the applicable matters. Consequently, it is not admissible under 803(8).

We conclude the evidence was inadmissible hearsay; thus, the trial court erred in admitting the document. We next turn to the issue of whether the error was harmful to appellant.

## HARMLESS ERROR ANALYSIS

### 1. Standard of Review

■ Rule 81(b)(2) of the Texas Rules of Appellate Procedure requires us to reverse the trial court's judgment if the record reveals error, unless we determine the error did not contribute to the conviction or punishment beyond a reasonable doubt. TEX. R.APP.P. 81(b)(2). In making a harmless error determination, we do not focus on the weight of other evidence of guilt. Instead, we determine whether the error might have prejudiced a juror's decision-making process. To make this determination, we must (1) isolate the error and all of its effects and (2) determine how much weight a juror would probably place upon the error. *Harris v. State*, 790 S.W.2d 568, 588 (Tex.Crim.App. 1989).

■ If the error was of a magnitude that disrupted the juror's orderly evaluation of evidence, no matter how overwhelming the evidence might have been, the conviction must be reversed. *Harris*, 790 S.W.2d at 588. Unless overwhelming evidence dissipates the error's effect upon the jury's function in determining the facts so that it did not contribute to the verdict, then the error is harmful. *Harris*, 790 S.W.2d at 587.

■ To calculate as much as possible the probable impact of the error on the jury in light of the existence of the other evidence, *Harris* directs us to examine six factors: (1) the source of the error; (2) the nature of the error; (3) whether and to what extent the State emphasized the error; (4) any collateral implications; (5) the weight a juror would probably place upon the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris*, 790 S.W.2d at 587.

### 2. Application of Law to Facts

■ The source and nature of the error are clear: the trial court erred in allowing evidence of the test results from the independent laboratory indicating appellant tested positive for amphetamines. The State introduced the evidence during the rebuttal portion of its case. The State called three witnesses in rebuttal. Two of those witnesses, both parole officers, were specifically called to testify about the positive drug test.[4] These parole officers were the last State's witnesses to testify before the case was submitted to the jury.[5] Moreover, the State, in the rebuttal portion of its closing argument, attacked appellant's credibility with the inadmissible drug test.

Specifically, the State argued:

Members of the Jury, I brought you the parole officers up here to show that he's a liar. He took the stand yesterday and said, "I never did have, as a condition of parole, to take a urinalysis test." He said that. Then he finally said[,] "Well, I had to take one or two." I brought him up here, and you saw, he had to take several there as a condition of parole from day one when he got out of the penitentiary. It's in evidence there. Take it back with you.

---

4. At the beginning of the testimony of the second parole officer, Thomas Doyle Vanderburg, appellant was granted a running objection to this "entire line of testimony." In granting appellant's request, the trial court stated that the "objections you made previously will apply to this line of testimony. It will be a running objection. The objection will appear in the record as though repeated in full at each appropriate time." We conclude the running objection was sufficient to preserve appellant's complaint. *See Sattiewhite v. State*, 786 S.W.2d 271, 283–84 n. 4 (Tex.Crim. App.1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990).

5. Although appellant testified in rebuttal, his testimony also focused on the positive drug test.

"I never tested positive. I've never tested positive for amphetamines." He tested positive on December 6th, 1990. Whether it was cold medicine or not, he tested positive. He didn't tell you that. I had to bring them up here to impeach him. That's why I brought the parole officers here, to show the credibility of this witness.

Consequently, the evidence of a positive drug test was the final evidence the jury heard before retiring for deliberations. Moreover, the State focused on that evidence in closing argument. We conclude, based on the nature of the evidence, the State's focus on that evidence, the timing of its admission in this case, and the fact that appellant's credibility was one of the most crucial issues in the case, that a jury would likely place considerable emphasis on the complained-of evidence in reaching its decision. Thus, we conclude its admission likely prejudiced the jury's decision-making process. Consequently, we cannot conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. Tex. R.App.P. 81(b)(2). Accordingly, we sustain appellant's first point of error. Our disposition of this point of error makes it unnecessary for us to consider appellant's remaining point of error.

We reverse the trial court's judgment and remand the case for a new trial.