COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

 


 
 
  
 DELORIS GENE
 POWELL,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-01-00406-CR
  
 Appeal from
  
 282nd District Court
  
 of Dallas County, Texas 
  
 (TC# F-0072963-S)
  
 
 


O P I N I O N

 

Deloris Gene Powell appeals her
capital murder convictions of Emmanuel Gillens, 78,
as well as his wife Nellie Gillens, 73.  In three issues, she challenges the legal and
factual sufficiency of the evidence and the admission of alleged hearsay
evidence from the child Frederick, made to his therapist.  We will affirm.

I.








The bodies of the Gillens
were found by police on a Wednesday.  A
neighbor saw lights on and heard a banging noise from the Gillens= home, early Tuesday morning.  Mr. Gillens= body had been stabbed three times
plus he had some twenty incised wounds, likely defensive wounds.  Mrs. Gillens
suffered seven stab wounds and some defensive wounds.  Thursday the body of six-year-old Corinthian,
the couple=s great-grandson was found wrapped in
a damp bathrobe, hidden in a closet of the home.  Missing from the couple=s home was another great-grandson
Frederick, age 3, cash from Mr. Gillens, and his
truck.  Police found a cigarette, which
was left burning on the television of the couple=s home, in a bedroom where one of the
bodies was found.  Mrs. Gillens did not allow smoking in the house and forensic
testing showed DNA from the cigarette matched appellant=s profile.  On the same Tuesday as the murders, Rockwall
County Sheriff=s Department stopped appellant for
impeding traffic, doing thirty miles per hour in a sixty five mile per hour
zone.  She was driving the deceased=s truck and had Frederick with
her.  A search produced two crack pipes,
cigarettes, $3,082 in various U.S. currency, and 5.1
grams of rock cocaine.  Further facts
will be developed as necessary in our sufficiency review.

II.








When we review the legal sufficiency
of the evidence, we review the proof in the light most favorable to the
prosecution to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2789, 61 L.Ed.2d 560 (1979).  This
standard applies in both direct and circumstantial evidence cases.  Turner v. State, 805 S.W.2d 423, 427
(Tex. Crim. App. 1991), cert. denied, 502 U.S.
870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991).

In determining the factual
sufficiency of the elements of an offense, the reviewing court Aviews the evidence in a neutral
light, and sets aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.@ Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000) (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). 
The court reviews the evidence weighed by the jury that tends to prove
the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact.  Id. 
We are authorized to disagree with the fact finder=s determination.  Id. (citing Clewis, 922 S.W.2d at 133). 
This review, however, must employ appropriate deference to prevent an
appellate court from substituting its judgment for that of the fact finder, and
any evaluation should not substantially intrude upon the fact finder=s role as the sole judge of the
weight and credibility given to witness testimony.  Jones v. State, 944
S.W.2d 642, 648 (Tex. Crim. App. 1996).  The complete and correct standard a reviewing
court must follow to conduct a Clewis factual
sufficiency review of the elements of a criminal offense, asks whether a
neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the jury=s determination, or the proof of guilt, although adequate if
taken alone, is greatly outweighed by contrary proof.  Johnson, 23 S.W.3d
at 11.








A conviction was authorized under the
evidence if the jury found:  (1) appellant
stabbed Mr. Gillens with the intent of killing him in
the course of robbing him; (2) appellant intentionally caused the death of both
Mr. and Mrs. Gillens during the same criminal
transaction; or (3) appellant stabbed Mrs. Gillens
with the intention of killing her in the course of robbing Mr. Gillens.  Tex. Penal Code Ann. ' 19.03(a) and ' 29.02(a) (Vernon 1994).

III.

The appellant argues only a cigarette
butt found on the television in the Gillens= home linked appellant to the
scene.  No witnesses placed appellant at
the home on the Monday night or Tuesday morning in question.  Appellant had previously been a renter of the
Gillens and, according to the argument, could have
left the unauthorized cigarette on an earlier occasion.  Although appellant was arrested driving Mr. Gillens= truck, appellant again argues there is no evidence that she
did not have permission.  Likewise there
was no evidence that Mrs. Gillens did not give
permission for appellant to give three-year-old Frederick a ride in the
truck.  Other physical evidence at the
scene did not link appellant.  The knife
had only the Gillens= blood.  Some evidence at the scene excluded appellant
and the DNA testing showed Aunknown contributors.@ 
A T-shirt and gloves contained Aunknown@ DNA. 
Latex gloves at the scene likely contained skin cells of appellant, not
blood.  Appellant argues the gloves could
have been used earlier when she helped Mrs. Gillens.








An alternate theory of the cash found
on appellant showed she had received a $2,800 tax refund, albeit the check was
cashed in February, two months before the murders.  Finally, appellant argues the State failed to
prove that the murders were committed while appellant committed or attempted to
commit robbery.  Proof of a robbery
committed as an afterthought and unrelated to a murder will not support a
capital murder conviction.  See Moody
v. State, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992).

The State argues that it is indeed
entitled to prove its case with circumstantial evidence.  See Wilson v. State, 9 S.W.3d 852, 855 (Tex. App.--Austin 2000, no pet.).  We agree. 
Appellant no longer lived with the Gillens at
the time of the murders.  Although she
had recently moved out, she had been staying with a friend about a mile and a
half away from the home.  Appellant told
her friend she needed $500, but that she only had $250.  The friend also testified he only saw about
$100 in appellant=s possession. 
Appellant spent the weekend before the murders driving around buying
crack cocaine and getting high. 
Appellant also had a pair of white latex gloves in her car.  The appellant told her friend John Wesley
Smith, that Chad Kelly stole appellant=s car and $400 cash from her.








 A friend of the Gillens
testified he saw the couple late Monday afternoon and witnessed a customer
paying Mr. Gillens cash for landscape work.  Mr. Gillens
commonly kept cash at the house.  The
police investigation turned up no money, Mr. Gillens= truck was missing, and Frederick was
gone.  Appellant did not show up for work
on Tuesday, the day of the murders. 
Appellant was stopped that day by Rockwall Sheriff=s Department for impeding
traffic.  Appellant first identified
herself as Barbara Jackson, then later as Barbara Kelly.  She claimed Frederick was her six-year-old
son, then changed her story twice to identify
Frederick as her grandson then her nephew. 
A consent search produced the drugs we already noted plus over $3,000 in
cash.  Although much of the forensic
pathology was inconclusive, several items in the Gillens= truck appellant was driving were
positive for blood:  white latex gloves,
a jacket, garbage bags, washcloth, and a belt. 
The T-shirt worn by appellant had visible bloodstains, which were not
pathologically connected, but the back of the T-shirt had DNA markers of Mrs. Gillens.

Finally, the child Frederick=s statements given through the
therapist Karen Karr, further implicated appellant. 
When asked if someone hurt Frederick=s great-grandparents, he referred to
appellant=s nick name AHoney.@ 
Frederick also demonstrated an action by appellant and stated:  AShe went gr-r-r-r
and my grandpa fell down.@








We may agree with appellant, that a
cigarette on a television set where appellant had prior access, standing alone,
might not be legally sufficient under other circumstances.  Here, however, the sum total of the
surrounding additional facts and incriminating circumstances warrant the jury=s conclusion of guilt.  Beardsley v. State,
738 S.W.2d 681, 685 (Tex. Crim. App. 1987).  Appellant was arrested in recent possession
of stolen property.  In addition to
having the boy Frederick with her, appellant had cash she did not have the day
before, and had the truck of the murder victim. 
The unexplained possession of recently stolen property is a circumstance
of guilt in a robbery case.  Girard v. State, 631 S.W.2d 162, 163 (Tex. Crim. App. 1982). 
As far as appellant=s explanation of the tax refund, the jury was free to infer
this money was long gone given appellant=s apparent drug problem and the
testimony of two witnesses who said appellant only had about $100.  Further, appellant had blood and positive DNA
on her T-shirt, a stash of crack cocaine, told conflicting stories about
herself and the boy, knew the house, knew both the deceased, had motive,
opportunity, and proximity to rob and kill the Gillens.  Appellant=s first two issues are overruled.

IV.








In her final issue, appellant argues
the trial court erred by admitting hearsay statements of the boy Frederick,
through the witness Karen Karr.  Karr is
a child therapist working at the Dallas Children=s Advocacy Center.  Karr has no medical degree but rather has a
master=s in counseling from Dallas Baptist
University.  She is a licensed
professional counselor in Texas for six years and had ten years prior
experience in the same field.  Child
Protective Services referred the three-year-old Frederick to her for therapy.  Over a timely hearsay objection by the
defense, the trial court allowed Karr to testify that when she questioned
Frederick about his grandmother and grandfather, he stated that they were dead
and the person that hurt them was AHoney.@ 
Karr also testified, that the child, again in response to her
questioning of what appellant did, demonstrated, AShe went gr-r-r-r
and my grandpa fell down.@  She further related
Frederick wanted to Akick her [appellant=s] ass,@ and he demonstrated aggressive
signs.  When he saw the color red, he was
drawn to it and said, AOooh blood@ and looked afraid, according to
Karr.








Appellant cites only to Tex. R. Evid.
803(4).  She
presents no case authority on the complex question of whether the three-year-old=s account, particularly in response
to questioning by Karr, were statements for the purpose of medical diagnosis or
treatment.  The State argues for the
application of Gohring v. State, 967
S.W.2d 459, 461 (Tex. App. --Beaumont 1998, no pet.).  Gohring
holds:  Athe trial court could have reasonably
determined from the evidence that Petite, as a drama therapist working under
the supervision of a licensed psychologist for the purpose of providing
psychological treatment, was a >medical person.=@ 
Id.  Gohring
also noted the trial court did not err in admitting this evidence under  Rule 803(4)
because it would be a reasonable inference that C.G., who was a high school
student, would have understood she was seeing Petite for the purpose of medical
treatment in connection with the abuse, and that C.G.=s statements to Petite were made for
the purpose of medical diagnosis or treatment.  Id. 
Such is not the case with a three-year-old child, particularly one not
shown to be able to differentiate the truth from fabrication, and one who was
seen some time after the incident.  See
Sneed v. State, 955 S.W.2d 451, 456 (Tex. App.--Houston [14th Dist.] 1997,
pet. ref=d) (the primary focus is the
reliability of the evidence) (time to fabricate is a factor in reliability).

The State also cites Puderbaugh v. State, 31 S.W.3d 683, 685 (Tex.
App.--Beaumont 2000, pet. ref=d).  A physician
referred a child to a social worker for therapy.  The Beaumont court held:

Brouwer
acknowledged that in the course of treatment in counseling C.P., it had been
conveyed to C.P. that the reason for seeing him was to help her with her
emotional problems.  Brouwer
and C.P. discussed the importance of telling the truth to him, and C.P.
understood the difference between telling the truth and telling a lie.  Thus, the State established both the medical
care component of Brouwer=s sessions with C.P. and C.P.=s awareness of the purpose of the treatment.

 

Id.  In Puderbaugh,
a case of sexual assault, we only know that C.P. was under the age of
fourteen.  But we also know that there
was at least proof that C.P. knew she was seeing the social worker for treatment,
the treatment was in a medical office, referred by a physician[1]
and the therapist saw C.P. over 30 times. 
Id.[2]








To be admissible under Rule 803(4),
the statement must be reasonably pertinent to diagnosis or treatment.  For example, statements as to fault would not
ordinarily qualify. Fleming v. State, 819 S.W.2d 237,
247 (Tex. App.--Austin 1991, pet. ref=d).  Therefore, Aa patient=s statement that he was struck by an
automobile would qualify but not his statement that the car was driven through
a red light.@ 
Id.; see also Fed.
R. Evid. 803(4) advisory committee=s note.  Like Fleming, no specific inquiry was
made of Frederick whether he appreciated the need to be truthful in his
statements.  Unlike Fleming, the
record does not remotely address whether Frederick was confused,[3]
whether he was encouraged to tell the truth, whether he was honest, whether he
was parroting another, or coached on the Aissues= by anyone.  See Fleming, 819
S.W.2d at 247.  Rather, in her
sparse 13 pages of testimony, Karr only stated her minimal qualifications, her
need to find out what Frederick=s trauma was, who caused it, and what he saw and said.  The only modality mentioned by Karr was Aplay therapy.@ 
Frederick, in addition to answering direct questions about the trauma,
spoke of Superman and Batman.








We hold there is an abuse of
discretion to admit the out-of-court hearsay statements of this three-year-old,
where there is no evidence Frederick understood he was seeing Karr for the
purpose of medical treatment and that his statements were for the purposes of
treatment of his Atrauma.@  Gohring,
967 S.W.2d at 461; Metts v. State, 22
S.W.3d 544, 550 (Tex. App.‑‑Fort Worth 2000, pet. ref=d) ( review
of trial court=s evidentiary rulings is under an
abuse of discretion standard).  Absent
indicia of reliability sufficient to ensure the integrity of the fact finding
process, such evidence should be excluded. 
Philpot v. State, 897 S.W.2d 848, 852 (Tex.
App.--Dallas 1995, pet. ref=d).  When young children relate information to
medical providers, the presumption of reliability that forms the basis for the
Rule 803(4) exception may break down if the child does not understand the need
to be truthful.  Beheler v. State, 3
S.W.3d 182, 189 (Tex. App.--Fort Worth 1999, pet. ref=d).  The reviewing court must look to the record
to see if it supports a conclusion that the young child understood why he
needed to be honest when speaking to the care giver.  Id. 
The record discloses neither Frederick=s understanding the reason for his
treatment nor his need to be honest.








Next we turn to the harm
analysis.  Error in the admission of
evidence is subject to a harm analysis under Rule 44.2(b) of the Rules of
Appellate Procedure.  Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998).  A violation of the evidentiary rules that
results in the erroneous admission of evidence is nonconstitutional
error.  King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997).[4]  Any nonconstitutional
error Athat does not affect substantial
rights must be disregarded.@  Tex. R. App. P. 44.2(b).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s verdict.  See King, 953 S.W.2d
at 271.  A criminal conviction
should not be overturned for nonconstitutional error
if the appellate court, after examining the record as a whole, has fair
assurance that the error did not influence the jury, or had but slight
effect.  Johnson, 967 S.W.2d at 417. 
When applying the harmless error rule, a reviewing court should not
focus on the propriety of the outcome of the trial.  Instead, it should be concerned with the
integrity of the process leading to the conviction.  Harris v. State, 790
S.W.2d 568, 587 (Tex. Crim. App. 1989).  Among the factors to be considered are:  the source of the error; the nature of the
error; whether and to what extent the error was emphasized by the State; the
collateral implications of the error; how much weight a juror would probably
place upon the error; and whether declaring the error harmless would encourage
the State to repeat it with impunity.  Id.








Frederick=s hearsay statement via Karr about
his association of red paint and blood, could hardly
be surprising for a three-year-old. 
Likewise, the Agr-r-r-r@ statement, in light of his
predilection toward Batman and Superman, seem hardly persuasive.  However, his statement, via Karr, that AHoney@ hurt his grandfather and
grandmother, is powerful, if only emotionally. 
The prosecution did argue briefly Frederick=s hearsay, but mainly relied upon the
many circumstances that connected appellant to the murders.  Given the defense did not even bother to
cross-examine the very brief testimony of Karr, they
certainly seemed to view it as not that effective.  Karr had little expertise, and only mentioned
play therapy as her means of ascertaining the cause of Frederick=s trauma.  Rockwall police had already testified that
when appellant was arrested the day of the murders, the child was
incoherent.  The strong circumstantial
evidence of appellant=s access to the home, her proximity, her drug use, her
cigarette in one of the murder rooms, and being arrested the day of the murders
with the victim=s truck, his money, and his grandson, would, we believe, be
much more reliable and weighty to most juries than the hearsay of a
three-year-old.  Nor do we believe the
State would likely repeat this error, which is hopefully limited to this unique
case.  In light of the totality of the
record, we hold the error to be harmless under the nonconstitutional
standard.  Id.   Appellant=s third issue is overruled.

The judgment of the trial court is
affirmed.

 

                                                                           


DON
WITTIG, Justice

 

October 3, 2002

 

Before Panel No. 5

Barajas, C.J., Larsen, and Wittig, JJ.

(Wittig,
J., sitting by assignment)

 

(Publish)

 











[1]We
should note that Texas law has significant restraints against the unauthorized
practice of medicine.  AA person may not practice medicine in this
state unless the person holds a license issued under this subtitle.@ 
Tex. Occ. Code Ann. ' 155.001 (Vernon Supp. 2002).  A>Practicing medicine= means the diagnosis, treatment, or
offer to treat a mental or physical disease or disorder or a physical deformity
or injury by any system or method, or the attempt to effect
cures of those conditions . . . .@  Id. at '
151.002(a)(13).





[2]See
also Moyer v. State, 948 S.W.2d 525, 527‑28 (Tex. App.‑‑Fort
Worth 1997, pet. ref=d)
(finding trial court did not err in concluding that statements made by patient
to paramedic were admissible under  Rule
803(4)); Macias v. State, 776 S.W.2d 255, 258‑59 (Tex. App.‑‑San
Antonio 1989, pet. ref=d)
(finding that statements by a psychologist Awere
admissible under@ Rule
803(4) because they Awere
made for the purpose of medical diagnosis and treatment,@
and allowing statements by the victim=s
mother under the same rule); Torres v. State, 807 S.W.2d 884, 886‑87
(Tex. App.‑‑Corpus Christi 1991, pet. ref=d)
(finding emergency room nurse could testify as to victim=s
statement under Rule 803(4) even though nurse was also collecting evidence); Gregory
v. State, 56 S.W.3d 164, 184 (Tex. App.--Houston [14th Dist.] 2001, pet.
granted) (Wittig, J., dissenting) (allowing nurse to
testify as expert and recite history by patient).





[3]When
appellant was stopped by Rockwall deputies and arrested, the boy was said to be
incoherent.





[4]Appellant
made no objection under the confrontation clause.  Hearsay statements used against a defendant
over his objection could violate the confrontation clause if they were not
admitted under a well‑recognized exception to the hearsay rule or the
court failed to make a finding that the statements were otherwise
reliable.  See Idaho v. Wright,
497 U.S. 805, 817, 110 S.Ct. 3139, 3147, 111 L.Ed.2d
638 (1990); Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct.
2531, 2539, 65 L.Ed.2d 597 (1980).