Opinion issued November 6, 2003










     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00651-CR




KATHRYN WEST, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 908110




OPINION

          A jury convicted appellant, Kathryn West, of aggregate theft, found the
enhancement allegations in the indictment true, and assessed punishment at
confinement for two years. The jury also imposed a $10,000 fine. On appeal,
appellant contends that the trial court erred in admitting several of the State’s exhibits
because the exhibits were inadmissible hearsay.
          We reverse and remand.
BACKGROUND
          Appellant was the business manager for the Moody Health Center Clinic
(hereinafter the “Clinic”) from December 1998 to August 29, 2001. Pursuant to her
daily duties, appellant received from each of the Clinic’s front-desk personnel all
money received the day before, as well as a report of the prior day’s transactions. 
Appellant entered the information obtained from the front-desk personnel into the
computer system and generated a deposit report indicating the Clinic’s total revenue
from the day before. Appellant then prepared the daily deposit. 
          At trial, the State presented evidence supporting its theory that appellant stole
a total of $8,019.24 from the Clinic between April 4, 2001 and August 29, 2001. 
Specifically, the State’s theory asserted that, on numerous occasions, appellant kept 
cash she received from the front-desk personnel instead of including it with the daily
deposit. To conceal her theft, appellant then erased from the computer system cash
transactions equaling the amount she kept.
 
 
          In presenting its theory to the jury, the State relied upon three bodies of
evidence of which appellant complains on appeal. The complained-of evidence
consists of (1) appellant’s Gulf Coast Federal Credit Union account records (exhibit
28) (hereinafter “bank records”) and summaries thereof (exhibits 29A, 29B, 35 and
36), (2) the Clinic’s business records (exhibit 23) and summaries thereof (exhibits 3,
4, 5, 24-27 and 34), and (3) bank records of Margarita Rodriguez, another employee
of the Clinic (exhibit 33).
APPELLANT’S BANK RECORDS
          In her third point of error, appellant asserts that the trial court erred in
admitting her bank records because the State failed to establish the proper foundation
for admittance of the records under the business records exception to the hearsay rule.
Relatedly, in her fourth point of error, appellant asserts that the trial court erred in
admitting the summaries of her bank records because the bank records, themselves,
were not properly admitted.
A.      Standard of Review

          Whether evidence is admissible is a question for the trial court to resolve. 
Moyer v. State, 948 S.W.2d 525, 528 (Tex. App.—Fort Worth 1997, pet. ref’d). We
allow the trial court broad discretion concerning the admissibility of evidence and
will only reverse upon a showing of a clear abuse of discretion. Williams v. State,
535 S.W.2d 637, 639-40 (Tex. Crim. App. 1976); Spradlin v. State, 100 S.W.3d 372,
381 (Tex. App.—Houston [1st Dist.] 2002, no pet.). An abuse of discretion occurs
when the trial court acts without reference to any guiding rules and principles or acts
arbitrarily or unreasonably. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim.
App. 1990). 
          Error in the admission of evidence is non-constitutional error and is therefore
subject to a harm analysis under Rule of Appellate Procedure 44.2(b). Potier v. State,
68 S.W.3d 657, 666 (Tex. Crim. App. 2002); Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998). Therefore, to obtain a reversal of a conviction based on error
in the admission of evidence, an appellant must show that the trial court’s ruling was
in error and that the error affected substantial rights of the defendant. Tex. R. App.
P. 44.2(b). 
          B.      Business Records Exception
          Hearsay is a statement, other than one made by the declarant while testifying
at trial, that is offered to prove the truth of the matter asserted. See Tex. R. Evid.
801(d). Although hearsay statements are generally inadmissible, see Tex. R. Evid.
802, there are a number of exceptions to this general proscription. Tex. R. Evid. 803. 
One such exception to the hearsay rule, commonly referred to as the “business records
exception,” provides for the admission of records of regularly conducted business
activities. Tex. R. Evid. 803(6). Rule of Evidence 803 provides as follows:
 
 
The following are not excluded by the hearsay rule, even though
the declarant is available as a witness:
 
          . . . . 
 
(6) Records of Regularly Conducted Activity. A memorandum,
report, record, or data compilation, in any form, of acts, events,
conditions, opinions, or diagnoses, made at or near the time by, or from
information transmitted by, a person with knowledge, if kept in the
course of a regularly conducted business activity, and if it was the
regular practice of that business activity to make the memorandum,
report, record, or data compilation, all as shown by the testimony of the
custodian or other qualified witness, or by affidavit that complies with
Rule 902(10), unless the source of information or the method or
circumstances of preparation indicate lack of trustworthiness. 
“Business” as used in this paragraph includes any and every kind of
regular organized activity whether conducted for profit or not.

Id. 
          Therefore, records that would otherwise be hearsay are admissible under Rule
803(6), if the following foundational requirements are shown: (1) the records were
made and kept in the course of a regularly conducted business activity; (2) it was the
regular practice of that business activity to make the records; (3) the records were
made at or near the time of the event being recorded; and (4) the person making the
records or submitting the information had personal knowledge of the events being
recorded. Id; Philpot v. State, 897 S.W.2d 848, 851-52 (Tex. App.—Dallas 1995,
pet. ref’d). 
C.      Appellant’s Bank Records
          At trial, Terri Wollard, the custodian of records for Gulf Coast Federal Credit
Union, provided the foundation testimony regarding appellant’s bank records. Ms.
Wollard testified as follows: 
Q:Let me show you what I have previously marked as State’s
Exhibit No. 28 [Gulf Coast account records]. Do you recognize
State’s Exhibit No. 28?
 
A:Yes. This is what we pulled per the subpoena.
 
Q:Okay. And are those records that are maintained by the credit
union as part of its business?
 
A:Yes.
 
Q:Are those records made at or near the time of the events that they
record?
 
A:Yes.
 
Q:Are they made by persons with personal knowledge of the events
that were contained therein?
 
A:Yes.

When the State attempted to introduce the records into evidence, trial counsel made
the following objection to which the State did not respond:
[Trial counsel]:Got three objections. First of all, she hasn’t stated
that they’re regularly kept in the business. She just
said that they’re kept. She also has not stated that
she personally knows the manner in which they’re
kept, and thirdly, we’re objecting, reasserting our
objection. We have not had 14 days notice.

          Appellant now contends that the trial court erred in admitting the bank records
because the State failed to establish a proper foundation for admittance of the records
under Rule 803(6). Specifically, appellant argues that the State failed to elicit
testimony from Ms. Wollard showing that (1) the records were made in the course of
a regularly conducted business activity and (2) it was the regular practice of that
business activity to make the records. The State counters that the term “business,”
as defined by Rule 803(6), connotes both regularity in the activity recorded, as well
as regularity in keeping the records. The State concludes that Ms. Wollard’s
testimony that the bank records were “maintained by the credit union as part of its
business,” satisfied these foundational requirements. 
          The definition of “business” found in Rule 803(6) must be considered within
the context of the rule itself. See Tex. R. Evid. 803(6). Within the context of Rule
803(6), the term acts as one of two restrictive modifiers, limiting the records to which
the exception applies to those of “regularly conducted business activities.” Because
Rule 803(6) expressly provides that an activity to which records pertain must not only
be a business activity but also a “regularly conducted” activity, “business” cannot
connote a regularity in the activity recorded. Otherwise, the phrase “regularly
conducted” would become superfluous. Such superfluity is contrary to established
rules of construction. Dowthitt v. State, 931 S.W.2d 244, 258 (Tex. Crim. App.
1996). For the same reason, it would be improper to conclude that the term
“business” connotes a regularity in keeping the records, as such a connotation would 
 
render unnecessary the rule’s language requiring that the regular practice of a
business activity be to keep the records at issue.
          We conclude testimony reflecting that records are maintained as part of a
business does not relieve a party from otherwise showing that the records were kept
in the course of a regularly conducted business activity and that it was the regular
practice of that business activity to make the records.
          The State also asserts that the trial court was entitled to look to the bank
records themselves to determine if they were admissible under Rule 803(6). 
However, an examination of the bank records does not establish that the records were
of a regular conducted activity or that it was the regular practice of the bank to make
such records. There is no presumption that bank records have any more reliability
than other business records, such that bank records are immune from Rule 803(6)
foundational requirements. 
          Other than Ms. Wollard’s testimony, there was no testimony establishing the
foundation required by Rule 803(6). Consequently, the admissibility of appellant’s
bank records depended on whether Ms. Wollard’s testimony satisfied the rule’s
foundational requirements. We conclude that Ms. Wollard’s testimony did not
establish that appellant’s bank records were made in the course of a regularly
organized activity or that it was the regular practice of that business activity to make
such records.
          We hold that the trial court erred in admitting appellant’s bank records, because
the State failed to establish a proper foundation for their admittance. Because the
summaries of appellant’s bank records were predicated on the improperly admitted
bank records, we further hold that the trial court erred in admitting the summaries of
appellant’s bank records as well.
D.      Harm Analysis
          Having determined that the trial court erred in admitting the bank records into
evidence, we must now determine whether that error affected the substantial rights
of appellant.
          A substantial right is affected when the error has a substantial and injurious
effect or influence in determining the jury’s verdict. Morales v. State, 32 S.W.3d 862,
867 (Tex. Crim. App. 2000). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has
fair assurance that the error did not influence the jury or had but a slight effect. Id. 
In assessing the likelihood that the jury’s decision was adversely affected by the error,
the appellate court should consider everything in the record, including (1) the State’s
theory and any defensive theories, (2) the nature of the evidence supporting the
verdict, (3) any testimony or physical evidence admitted for the jury’s consideration,
and (4) the State’s closing arguments. Id. 
 
          Appellant’s trial theory alleged that, although money was stolen from the
clinic, appellant was not responsible. Appellant tried to show that the missing money 
was the result of the Clinic’s poor organization or another employee’s theft. The
State, however, used appellant’s bank records to tie the missing money to appellant.
          Appellant’s bank records showed every transaction appellant made between
April 1, 2001 and October 31, 2001. The summaries of the account activity
condensed and arranged the information into a spreadsheet format in which patterns
of activity could be identified. The State relied heavily on this evidence.
          The State presented Judith Golike, a fraud examiner for the Harris County
District Attorney’s office, to testify as an expert witness as to what appellant’s
account activity indicated. Ms. Golike testified that the frequency and number of
cash deposits made to the account were suspicious. Further, Ms. Golike testified that
the amount of cash deposited was suspicious as well. Ms. Golike also pointed out
that the cash deposits almost completely stopped at around the time that appellant was
fired from the Clinic. Finally, Ms. Golike pointed out that appellant’s account would
have been overdrawn during the period of the theft without the cash deposits. Ms.
Golike concluded that a conservative estimate of appellant’s theft was $8,019.24.
 
 
 
          The State also relied on the bank records and the summaries thereof during
closing arguments. During closing arguments, the prosecutor argued as follows: 
And don’t forget about [appellant’s] bank account. The amount of
money that went into her bank account. The most critical issue
regarding the bank account is that there were only two cash deposits
after September 6th. Go back there and look through her records. Look
at the spread sheet; and you will see that once she was confronted by
Sandy Mooney, once her theft scheme was over, there were no more
cash deposits of any significance into her bank account. What does that
tell you?
 
Four thousand five hundred dollars between April and August; and then,
absolutely nothing after September 6th when her scheme was
discovered.

          During deliberations, the jury took the prosecutor’s advice and considered the
bank records. Indeed, the jury specifically requested appellant’s bank records as well
as the summaries of the bank records. 
          We conclude the trial court’s admittance of appellant’s bank records and the
summaries of appellant’s bank records could have influenced the jury and had more
than a slight effect on the verdict. We hold that the admittance of this evidence
affected appellant’s substantial rights. We, therefore, sustain appellant’s third and
fourth points of error on appeal.
          Because our ruling on appellant’s third and fourth points of error is dispositive
of this appeal, we do not address appellant’s other points of error.
 
 
CONCLUSION
          Having sustained appellant’s third and fourth points of error, we reverse the
trial court’s judgment and remand the case to the trial court for further proceedings
consistent with this opinion.




                                                             Laura Carter Higley
                                                             Justice
 
Panel consists of Justices Hedges, Nuchia, and Higley.
Publish Tex. R. App. P. 47.2(b).