NO.
12-04-00355-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

DEBBIE
SUE JACKS,         §          APPEAL FROM THE 273RD

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §          SAN
AUGUSTINE COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Debbie Sue
Jacks was convicted of theft of property of more than $100,000.00, a second
degree felony, and was sentenced to ten years of imprisonment.  Appellant challenges the admission of hearsay
testimony and venue.  We affirm.

 

Background

            On April 25, 2001, a San Augustine
County grand jury indicted Appellant for theft of more than $100,000.00 but
less than $200,000.00.[1] 
Appellant pleaded not guilty and was tried before a jury.[2]  








            Testimony at trial revealed that
during Appellant’s employment with Sabine County Hospital Home Health, she went
to the home of R.D. and Jewel Turner three times a week to assist them with
their personal care.  The Turners were in
their eighties at the time.  After
Appellant stopped working for the home health company, Mrs. Turner called her
occasionally to do “odd” jobs and paid her for each job.








            In April 1999, Mr. Turner was
hospitalized and the Turners’ son Robert came to see after his parents.[3]  During his trip, Robert asked Appellant to
make sure that the Turners had food to eat and were taking their medicine after
he returned home.  Appellant provided
this service for one month and was paid $100.00 per week.  One month later, Mr. Turner started having
mini-strokes, and Appellant began staying at the Turners’ home 24 hours a
day.  According to Appellant, Mrs. Turner
agreed to pay her $900.00 per month.

            In October 1999, Mrs. Turner broke
her hip and was no longer able to drive. 
Her mental condition severely deteriorated after she was administered
anesthesia during her hip surgery.  Both
of the Turners continued to decline, and their sons decided that several other
people should be hired to assist in providing the Turners’ care.  Robert testified that he trusted Appellant
and allowed her to hire the other caregivers since she was from the area and “knew
people.”  He stated that the compensation
they agreed upon for Appellant was $300 per week.    

            Elaine Coulter testified that she
was originally hired in 2000 to provide weekend care for the Turners.  For the first three to four months, Elaine
worked from Friday evening until Monday morning.  Appellant worked weekdays from 6:00 a.m.
until 2:00 p.m., and two other caregivers worked the remaining shifts.  Elaine usually saw Appellant only on Monday
mornings, when Appellant relieved Elaine after her weekend duties. 

            When Elaine first began working for
the Turners, she noticed that the house was dirty, there was little food in the
house, and the Turners had not been bathed regularly.  Appellant, acting as the “primary caregiver,”
prepared the Turners’ medications and instructed the other caregivers what
should be given to them.  Elaine became
concerned when she saw the “thousands of dollars” of medication in the bathroom
that was prescribed to the Turners but not being administered to them.              In
June 2000, Elaine found a note that read, “Dear Mrs. Turner, thank you –.”  Elaine became suspicious and looked at the
Turners’ checkbook, which had been left lying out.  She saw that several checks had been written
to Appellant, totaling thousands of dollars. 
Elaine told the Turners’ son Robert about the checks and the state in
which she had found his parents and their home. 
Robert fired Appellant in June 2000. 


            After firing Appellant, Robert
contacted the Texas Department of Family and Protective Services, Adult
Protective Services division (APS), and drove to the Turners’ home to assess
the situation.  When he arrived, he had
difficulty finding financial records. 
Robert testified that Mrs. Turner had always been a meticulous
bookkeeper.  He stated that Mrs. Turner
always kept the couple’s financial or business documents organized in files
located in a filing cabinet.  However, he
found checkbooks and other financial documents 
“hidden in closets, in shoe boxes, under the bed, in the back of file
cabinets, just everywhere.”  Robert said
that after an exhaustive search, he was unable to find all of the recent
records.  Neither he nor anyone else was
able to locate the black ledger book in which Mrs. Turner kept records of money
spent.  After reviewing the records that
he found, he was shocked at the number and dollar amounts of checks written to
Appellant and her mother.  He questioned
whether his father’s signature on one check was authentic, claiming that his
father never signed checks.  He also
questioned whether some of Mrs. Turner’s signatures were authentic. Although
Appellant denied ever signing any checks, Robert testified that Appellant had
told him she had signed checks at times in order to get bills paid when she was
unable to coax Mrs. Turner to sign.  Robert
also questioned the lack of promissory notes to back up all the checks that
were noted as “loans,” which he said was a clear departure from his parents’
usual business practices.   

            Rhonda Brooks, a certified adult
protective services supervisor for APS, investigated the Turners’ case after
Elaine Coulter reported her observations to Robert Turner.  At trial, Brooks talked about the markers
that suggest exploitation of the elderly. 
Brooks testified that she found evidence of each marker in this case,
describing the situation as “a textbook case of exploitation.” 

            During her investigation, Brooks
found over 65 checks that had been written to Appellant, her mother, or to
third parties for the benefit of Appellant. 
Some of the checks to Appellant and her mother had the notation “loan”
in the memo section; the others had no notation showing the purpose of the
checks.  Three of the checks were for a
Ford Explorer that the Turners “signed over” to Appellant.  Although most of the checks appear to have
been signed by Mrs. Turner, many were in Appellant’s handwriting.   Brooks concluded that the case against
Appellant was financial exploitation based on undue influence.  She stated her opinion that the Turners no
longer had full mental capacity.  She
verified the Turners’ diminished capacity with the Turners’ doctor and stated
that Appellant knew of their dementia because she was the person who took them
to their doctor’s appointments.

            The jury convicted Appellant of the
crime as charged, sentenced her to ten years of imprisonment, and assessed a $10,000.00
fine.  The trial court overruled
Appellant’s motion for new trial, and this appeal followed.     

Admission of
Hearsay








            In her first
issue, Appellant complains that the trial court permitted Rhonda Brooks, the APS
supervisor who investigated the complaint against Appellant, to testify about
the value of the Ford Explorer that the Turners purchased and “signed over” to
Appellant.  Specifically, Appellant
points out that although Brooks made no showing that she has knowledge of motor
vehicle evaluation, she testified about the value of the Explorer using
information from the Kelley Blue Book.

Standard of Review              

            We review the
trial court’s decision to admit or exclude testimony under an abuse of
discretion standard.  Kelly v.
State, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992).  An abuse of discretion occurs when the trial
court acts without reference to any guiding rules and principles or acts
arbitrarily or unreasonably.  Montgomery
v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  In determining whether a trial court abused
its discretion, we review the trial court’s ruling in light of what was before
the trial court at the time the ruling was made.  Hoyos v. State, 982 S.W.2d 419,
422 (Tex. Crim. App. 1998).  This
standard requires an appellate court to uphold a trial court’s admissibility
decisions when they are within the zone of reasonable disagreement.  See Montgomery, 810 S.W.2d at
391 (op. on reh’g).   

Discussion

            In the case at
hand, the State alleged that Appellant committed theft of more than $100,000.00
but less than $200,000.00.  Consequently,
the State had the burden to prove the fair market value of the stolen property
at the time and place of the offense.  See
Tex. Pen. Code Ann. § 31.08.  Rhonda Brooks testified that the Turners
bought a new Ford Explorer and then “signed it over” to Appellant.  Brooks also testified that the vehicle was
valued at $21,000.00 according to the Kelley Blue Book.  Appellant objected to Brooks’s use of
information from the Kelley Blue Book, contending it was hearsay.  The trial court overruled Appellant’s hearsay
objection. 

            Hearsay is an
out of court statement offered at trial to prove the truth of the matter
asserted.  Tex. R. Evid. 801(d). 
Hearsay is not admissible, absent a rule-based or statutory exception to
the hearsay rule.  Tex. R. Evid. 802; see Philpot v.
State, 897 S.W.2d 848, 851 (Tex. App.–Dallas 1995, pet. ref’d).  One exception to the hearsay rule permits the
admission of certain objective data such as market quotations, tabulations,
lists, directories, or other published compilations, generally used and relied
upon by the public or by persons in particular occupations.  See Tex.
R. Evid. 803(17). 

            On appeal,
Appellant does not dispute that the Kelley Blue Book is such a published
compilation.  Instead, she argues that
the proper predicate was not laid to establish this exception to the hearsay
rule.  Appellant’s complaint on appeal –
no proper predicate – does not comport with her objection at trial –
hearsay.  Therefore, nothing is preserved
for our review.  See Jones v. State,
817 S.W.2d 854, 857 (Tex. App.–Houston [1st Dist.] 1991, no pet.)  Even if Appellant had preserved the issue,
however, the result would not change.

            Immediately
after the trial court overruled Appellant’s hearsay objection, Brooks testified
that she found a check in the Turners’ account for over $22,000.00[4]
that was used to pay the balance owed on the Ford Explorer.  Fair market value can be proven by showing
the price paid for the stolen item.  See
Keeton v. State, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991).  Therefore, assuming arguendo that the trial
court erred in overruling Appellant’s hearsay objection, any such error was
harmless because the value of the Explorer was established by other
testimony.  Appellant’s first issue is
overruled.

 

Proof of Venue

            In her second issue, Appellant
challenges venue, contending that there is no evidence in the record that any
of the actions for which she was prosecuted occurred in San Augustine County,
the county in which she was prosecuted.  

Discussion

            The
Texas Code of Criminal Procedure provides that where property is stolen in one
county and removed by the offender to another county, the offender may be
prosecuted in either the county where the property was stolen or the county
where the property was taken.  See Tex. Code Crim. Proc. Ann. art.
13.08.  Here, the record does not reflect
that the property was stolen in one county and taken to another.  Therefore, the proper county for the
prosecution of Appellant is the county in which the offense was committed.  See id. art. 13.18.  “To sustain the allegation of venue, it shall
only be necessary to prove by the preponderance of the evidence that by reason
of the facts in the case, the county where such prosecution is carried on has
venue.”  Id. art.
13.17.  Failure to prove venue in the county of prosecution is reversible error.  See Black v. State, 645 S.W.2d
789, 791 (Tex. Crim. App. 1983).  

            The
Texas Rules of Appellate Procedure provide that unless disputed in the trial
court, or unless the record affirmatively shows the contrary, the court of
appeals must presume that venue was proved in the trial court.  Tex.
R. App. P. 44.2(c)(1).  In this
case, Appellant did not raise the issue of venue in the trial court.  Therefore, we will presume that venue was
proven unless the record affirmatively shows otherwise.  Id.; Clark v. State,
558 S.W.2d 887, 891 (Tex. Crim. App. 1977). To overcome the presumption of
venue, Appellant must affirmatively and conclusively show that the venue of
prosecution was improper.  See Dill
v. State, 895 S.W.2d 507, 508 (Tex. App.–Fort Worth 1995, no
pet.).  An appellate court may not
presume venue was proved by the State if the record affirmatively negates the
State’s proof on the matter of venue. 
Holdridge v. State, 707 S.W.2d 18, 21-22 (Tex. Crim. App.
1986).  








            In
this case, a San Augustine County grand jury indicted Appellant, and the
district attorney for San Augustine and Sabine counties prosecuted the
case.  Thus, to overcome the presumption
that venue in San Augustine County was proper, the record must contain
affirmative and conclusive proof that the crime did not occur in that
county.  Appellant states that the bank
where the Turners had their accounts was in Hemphill, Texas, which she asserts
is in Sabine County.  Appellant also
states that the post office box address for the Turners and Appellant’s address
were both in Pineland, asserting that Pineland is also located in Sabine
County.  However, Appellant has
identified nothing in the record that shows any of the conduct constituting
theft occurred outside San Augustine County. 
Therefore, we must presume that venue was proven at trial.  Dill, 895 S.W.2d at 508.  Appellant’s second issue is overruled.

 

Disposition   

            Having
overruled each of Appellant’s issues, we affirm the judgment of
the trial court.

 

 

                                                                                                     DIANE DEVASTO    

                                                                                                               Justice

 

 

Opinion delivered March 15, 2006.

Panel consisted of
Worthen, C.J., Griffith, J. and DeVasto, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] A person commits theft
if she unlawfully appropriates property with intent to deprive the owner of the
property.  Tex. Pen. Code Ann. § 31.03(a) (Vernon Supp. 2005).  An offense under this section is a felony of
the second degree if the value of the property stolen is $100,000.00 or more
but less than $200,000.00.  Id.
§ 31.03 (e)(6).  





[2] Five persons were
indicted in Cause Number CR 7365 in the 1st District Court of San Augustine
County.  Appellant and her mother,
Dorothy Ann Latham, were prosecuted together in a single trial, from which the
instant appeal arises.  Appellant’s
husband, Lee Douglas Jacks, and her father, Donald Melvin Latham, were
prosecuted in a single trial following Appellant’s trial.  Appellant’s sister, Betty Holloway, made
restitution of $1,500.00, and the case against her was dismissed.





[3] R.D. Turner had two
sons.  Robert Turner lived in Topeka,
Kansas, and Raymond Turner lived in Atlanta, Georgia.  After R.D.’s first wife died, he married
Jewel Turner when his sons were young. 
Robert testified that he considered Jewel to be his mother although
Appellant testified that neither Robert nor Raymond were close to either of the
Turners.  





[4] The record reveals
that a total of $23,673.86 was paid for the Ford Explorer from the Turners’
account: one check for $22,562.28 and two checks for $555.79 each.